### LUCAS v. THE BANK OF DARIEN.

1. If no notice be given of the dissolution of a copartnership, it will be considered as still existing, as to creditors.
2. The rule in such cases is, that to those who have had previous dealings with the firm, actual notice must be given; and notice in a Gazette, to those who have had no previous dealings.
3. A change of pursuits by one partner, is not sufficient notice, nor is a removal out of the State.
4. The rule is not varied, though the creditor be a bank, established after the dissolution.
5. To charge the bank with notice of the dissolution, after a judgment at law, it is not sufficient to shew that the partner who received the credit, was one of the directors of the bank.
6. Judgment obtained in a sister State, when the Court there had no jurisdiction over the person, is not binding here, and the want of jurisdiction is a good plea at law; therefore, Equity will not relieve against a recovery at law on such judgment.
7. A partner may appoint an agent to make and indorse bills, &c. and such power is not void, although granted under seal by one partner only.
8. Whether such power can extend to authorize the agent to enter appearances for copartners—*Quaere.*
9. Equity will not relieve against a judgment at law, for mere technical defects in the proceedings.
10. In Equity, all parties in interest should be joined; but to this rule there are exceptions.
11. Those only against whom process is prayed, are to be considered as defendants in an Equity proceeding.
12. A bill for discovery must state the matter sought to be discovered, shew that it is material, and state the nature of the defence at law; and not deal in vague inquiries.
13. Affirmative allegations in an answer, not responsive to the bill, must be proved at the trial.
14. But where the answer is not traversed, it is to be taken as true—*Semble.*

WALTER B. LUCAS filed a bill in Equity in the Circuit Court of Montgomery county, against the Bank of Darien, for relief against several judgments at law, which said bank sought to enforce against him.

The bill charges that the complainant and one John Lucas had formerly been copartners in trade, under the firm of J. & W. Lucas; that they transacted business in Milledgeville, and also in Twiggs county, Georgia, and that they were also concerned in the house of Lucas, Goodall, & Co. that on the 18th of May, 1818, they dissolved their copartnership, and a written agreement was executed as follows:

"Milledgeville.—Owing to a dissolution of the copartnership of J. & W. Lucas, and Lucas, Goodall, & Co. I here this day, clear said W. Lucas, of said firm of J. & W. Lucas, and Lucas, Goodall, & Co. of all his liability and responsibility of all demands, debts, contracts,

accounts, or otherwise heretofore made or contracted, and he, said Walter Lucas, taking the stock of goods, debts, and the inclusive establishment in Twiggs county, as an equivalent for his interest in said firm of John & W. Lucas, and Lucas, Goodall, & Co. and John Lucas, taking the establishment at Milledgeville, and all things thereto appertaining, as an equivalent for my interest, I paying all debts, &c. Given under my hand, this 18th May, 1819.                           JOHN LUCAS."

That the complainant, since that time, had no partnership transactions in Georgia, and no concern with J. Lucas, but was concerned in business with one Henry Lucas, in Alabama.

He charges that in 1818, the Darien bank was chartered, a branch of which was established in Milledgeville, and went into operation only after he removed to Alabama, and with which he never had any dealing; that John Lucas was a large stock holder, and was a director in said branch bank, and continued so till July, 1820; and that after the complainant's removal, in 1819 and 1820, John Lucas became embarrassed by erecting large buildings in Milledgeville, and to relieve himself, obtained loans from the branch bank on twelve notes, which they discounted in May, June, July, August and October, 1820. amounting to $29,087 75. The notes were signed in the name of J. & W. Lucas, in some of them as makers, and others as indorsers; and some were made and some indorsed in the name of J. & W. Lucas, by T. Fort as their attorney; that Fort signed them by virtue of a power of attorney under seal, made by John Lucas, in May, 1820, in the name of J. & W. Lucas, two years after the dissolution of the partnership. He charges that the notes and power were made, and all the transactions done, entirely without his knowledge, authority or consent, and that John Lucas received all the proceeds to his own use; that the pursuits and embarrassments of John Lucas were known to the bank, that they knew the complainant had removed to Alabama, notwithstanding which, they discounted the notes in the name of J. & W. Lucas, without any proof that they were partners, or ever giving notice to the complainant.

It is further alleged, that in August, 1820, after the principal amount of the notes was discounted, and when part was due, the branch bank, without the knowledge or consent of the complainant, made an arrangement with

John Lucas, and on certain conditions, extended the time of payment of the amount discounted, for twelve months; and a consolidated note, as the complainant is informed, was received by them, of J. Lucas, in the name of J. & W. Lucas, for the whole, with security; after which they again granted him other discounts; and that in November following, all the original notes were protested for non payment, of which no notice was ever given to the complainant; that the directors, though aware of the embarrassed situation of John Lucas in the summer and fall of 1820, yet took no steps to coerce payment of the notes till February or March, 1821, when they brought suits in the Superior Court of Baldwin county, Georgia, and in some of the cases service of process was acknowledged by John Lucas, in the Name of J. & W. Lucas, and in others, by one T. H. Kenan, by virtue of a power of attorney made by said John Lucas, and that the complainant at no time during the pendency of the suits, had any notice of their existence; that in August, 1821, after the suits were commenced, and before trial, John Lucas died; notwithstanding which, the bank proceeded to judgment against both him and the complainant; that about the same time, suits were also brought against W. D. Lucas, as maker of some of the notes, and as indorser of others, and before judgment the branch bank compromised with him, received a part, and exonerated him from the remainder; but how much he paid, the complainant does not know. He also states that he is informed and believes, that Hunter made considerable payments, but the amount he does not know.

It is further shewn by the bill, that in August, 1822, the bank instituted in Montgomery county, Alabama, seven suits on seven of the notes, against the complainant, to which he pleaded that judgments had been previously rendered against him on the notes, in Georgia, on which plea, judgments were rendered for him; that afterwards in March, 1826, twelve suits were brought against him on the records of the judgments obtained in Georgia, which last have, by order of the Court, been consolidated into one suit, which is still pending. The complainant alleges, that he is informed that the correspondence between the branch bank and said John Lucas, in relation to the extention of time of payment of the notes, is in the possession of the directors, and that he has no legal means by which he can procure proof of it to be used at law; that

he is not in possession of the accounts of said John Lucas, with the bank, shewing the payments made by W. D. Lucas and Hunter, and has no means to prove them at the trial; that the judgments rendered in Georgia, although illegal in that State, have not been set aside, wherefore he cannot defend at law.    The prayer of the bill is, that an injunction may issue against the Darien bank, restrain-ing them from further proceedings at law; and that a subpoena may issue to the president and directors of the branch bank, to answer &c. and for general relief against the Darien bank.    The injunction was granted without security in July, 1826, and the bill was filed in March, 1827.

In an answer and an amended answer filed by the Bank of Darien, they admit the complainant's residence in Alabama, but do not know when he removed there; they admit the copartnership but deny the dissolution, or at least, that such disssolution ever was made public, or that the Bank of Darien had any notice of it.    They say the partnership was notorious, and if a dissolution had been known to them, no discounts would have been made by them.    They admit that John Lucas was a stockholder and director in the bank, that he engaged in erecting buildings; that discounts were made to the firm; they do not know who received the proceeds, but believe it was the firm; they admit the making of the notes and indorse-ments by Fort, the attorney, and that it was under the power made in the firm name by John Lucas, and insists that the seal to it was surplusage and could not vitiate it, and they believe it was made with the complainant's knowledge and consent.    They believe that complainant received a large portion of the proceeds of the notes, and deny that any fraudulent discounts were made, or that any arrangement was made for extending the time, or that any consolidated note was taken.    They say that there were merely propositions made for that purpose, but which were not complied with, and the correspondence on that subject is set forth.    They admit trying the suits in Geor-gia, and that service was acknowledged by John Lucas, in the name of the firm, and also by Kenan under a power made by John, but that it was proper as a partner to do so; and refer to exemplifications, as to the manner in which they were conducted, and insist they are valid; that the complainant knew of their pendency, and deny that they were rendered previous to the death of John Lu-

JANUARY 1830. cas.   They admit that suits were brought against W. D.

Lucas
v.
Bk. of Darien.

Lucas and Hunter, and shew what notes were settled, and deny any arrangement made with them that is prejudicial to the complainant. They admit that seven suits were brought, which resulted as charged by the complainant. They also admit bringing the twelve suits, and insist on their right to recover in them. They exhibit all the correspondence to be found relating to the matter, &c. and deny all fraud and unlawful combination, &c.

At March term, 1827, the defendants appeared and moved for a dissolution of the injunction, which was overruled without prejudice. At September term, 1827, a motion was again made to dissolve the injunction for want of equity in the bill, which was also overruled, on which the answer was filed. This answer was excepted to, and some of the exceptions were allowed, and others overruled; the amended answer was afterwards filed, which was also excepted to; but at March term, 1828, those last exceptions being all overruled, the injunction was dissolved, and the cause was on motion of the complainant, and by consent, set down for hearing on the bill, answers, and exhibits. The Circuit Court rendered a decree dismissing the bill, from which Lucas appealed to this Court.

The errors assigned are that the exceptions to the several answers should have been sustained, and the defendants below perpetually enjoined, and that the bill should not have been dismissed.

*a* Wash. Rep. 287. 1 Munford 373.

GOLDTHWAITE and THORINGTON, for the appellant. The answers set up new matter in avoidance of the allegations in the bill; this new matter should have been proven on the trial, otherwise all the allegations in the bill might be admitted, and yet be avoided by new matter not responsive, which would necessarily compel the complainant to prove a negative. *a* John Lucas was a director of the bank, and therefore, the bank is properly charged with notice of the dissolution. One partner cannot bind his copartner by deed, *b* therefore, the notes executed by Fort under the power of attorney are void, and also the judgments rendered on them; *c* as much so as if they had been forged. There was no legal proof of the service of the process in those suits; where service is acknowledged, the hand writing must be proved: this was not done. *d*. The bill does not shew there are judgments in

*b* 7 Term Rep. 207. 10 East 417. 2 Caines Rep. 254. 1 Hen. and Mun f. 433. 2 John. Rep. 203. 1 Dall. Rep. 120. 19 John. 573, 531.

*c* 8 John. Rep. 67, 161. 2 Kent 91, 13 John. 192. 15 John. 121. 4 Cowen 393. 9 East 192. 1 Mass. 400. 3 Dall. 301. 5 John. 37. 1 Mll. 31. 1 Kirby 19.

Alabama; the answer sets them out; this is new matter; and if the plea of former recovery binds the appellant, the replication of *nul tiel record*, binds the bank. When a defendant undertakes to answer, he must answer fully; [a] the amended answer is evasive as to Fort's agency, and alleges a ratification of it by the complainant, but which is not explained, nor is the acceptance of the service in Georgia; [b] nor is it shewn how much W. D. Lucas paid. We are in Equity entitled to an injunction against the proceedings here, and also to relief against the judgments in Georgia, on the ground that the Court has obtained jurisdiction and will retain it to do full justice.

[a] John. Ch. Rep. 45. 4 Ib. 265. 10 Vesey 52. 2 Mad. 338.
[b] John. 65. 1 Ves. 52. 4 J. C. Rep. 205. 2 Mad. 338.

BUGBEE, ROCKWELL and GORDON, for the appellees. An appeal from a final decree opens the whole case for consideration. We may then consider the case in two points of view; I. As made by the complainant upon the face of his bill alone; and II. As presented by the bill, answers and exhibits, jointly.

I. The bill shews no grounds for equitable relief. It is deficient in three respects.

1. The bank is not made a party. The objects of the bill are three frold; to discover facts from the branch bank; to injoin the appellees from proceeding at law; and to obtain general relief; but no process of subpoena is prayed against the bank. No one is a party, against whom process is not prayed; [c] and praying relief against the agent does not make the principal a party. All persons having an interest, should be made defendants, [d] and here the bank is not properly brought before the Court. It is true there are exceptions to this rule, but where a necessary party is wanting, the objection is available on the final hearing. [e] It is somewhat analogous to a want of jurisdiction, which is a good objection at any stage of the proceedings. [f]

2. The nature of the defence at law is not set out; and this is a fatal defect. [g] The bill is said to be for discovery of matters to be used at law; it seeks to injoin proceedings at law; it is not, therefore, an original bill. [h] Its character is to be determined from its objects, and matter on its face. If it could be viewed as a bill for general relief, bills of discovery, technically so called, would be unknown, Courts of common law would become useless, and jury trials would be of rare occurrence; it would destroy those land marks which experience has placed round legal and

[c] 1 John. Ch. Rep. 437. 2 John. Ch. Rep. 245. 7 Ves. 257, 9 Wheat. Rep. 904. Eden 231. 1 Peters U. S. Rep. 304. 2 Atk. 510. 12 Wheat. Rep. 193.
[d] 8 John. Ch. Rep. 590. 4 Ib. 25. 7 Ib. 211. 3 John. Cases 311, 596. 10 John. Rep. 167.
[e] 1 Peters U. S. Rep. 306. 2 Atk. 510.
[f] 1 Peters U. S. Rep. 110.
[g] 2 Caines Cas. in Error 296. 1 C. Rep. 546. 3 Ib. 45.
[h] 9 Cranch 19, 25.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

*a* 1. Fonbl.

*b* Eden on Inj.
3. 1 John. Ch.
Rep. 188.
*c* 11 Wheat.
Rep. 103, 119.
*d* 1 John. Ch.
Rep. 543.
4 Ib. 409.
2 Ib. 557.

*e* 4 Cowen
Rep. 293.

*f* 7 Cranch 67,
89.

*g* 1 Peters U.
S. Rep. 232.

*h* 7 John. Ch.
Rep. 223.
2 Wheat.
Rep. 380, 3.
1 Bibb Rep.
277.

equitable tribunals, and break down those barriers which have been wisely raised, to prevent either Court from encroaching on the jurisdiction of the other. Chancery does not depend on the mere will of the Chancellor; its objects, boundaries and rules, are as definite as those of the law, and as inflexible.

It is considered as assistant to courts of law, by removing impediments to the fair decision of a question therein, by compelling a discovery which may enable them to decide. It is concurrent, in most cases of fraud, accident and mistake; but in cases of concurrent jurisdiction, the Court which first obtains jurisdiction, will keep it. It is exclusive in all cases of trust, and it exercises a general jurisdiction to prevent a wrong where the positive law is silent, or inadequate to afford a remedy. *a*

3. The bill wants equity. The basis of jurisdiction for discovery is, that the subject of defence at law rests in the knowledge of the opposite party, and that the complainant has no other means to obtain it. *b* Material facts must be distinctly alleged so as to enable an issue to be formed, or to warrant a decree. *c* Where they depend on aliunde testimony, they afford no equity. *d* The bill is objectionable on those grounds. Again, the matter, if true, could be used at law. It is said the judgments in Georgia are subject to a defence here for want of jurisdiction there, and a case in Cowen is relied on, *e* and other authors to support the position. Let this be granted; but it gives no equity jurisdiction; it was matter of defence to the suits in Georgia. The complainant brings himself within the qualifications of the decision in *Russel v. Clark's Exr's.* *f* viewing the bill as one for general relief, equity has no jurisdiction, it is clearly a case of legal cognizance. *g* The Court, therefore, properly dismissed the bill, and permitted the complainant to assert his rights at law.

II. Upon a consideration of the bill, answers and exhibits, the decree was proper. It is said that the answers allege independent affirmative facts, which are not responsive to the bill, and are unsupported by proof. The cause was set down for hearing on motion of the complainant, without any extrinsic proof, and though it is held that when a cause is set for hearing on bill, answer and proof, the replication may be considerd as matter of form, and may be filed *nunc pro tunc*, yet when it is set for hearing on bill and answer, the doctrine is, that the whole is to be taken as true; *h* and the answer is evidence

for the defendant, unless disproved by two witnesses, [a] and it may contain the circumstances corroborating the denial. [b] It was held in a recent cause in New York, that when the answer is responsive to the bill, and within the discovery sought, it is legal in all cases, whether it is a denial of some fact alleged by the complainant, or contains a fact set forth by way of avoidance. [c] This position is well warranted by authority, and upon principle, when a party resorts to the confessions of his adversaries he should take the whole together. But the answers do not sustain the objection; the facts stated are within the discovery sought; they are responsive, and only set out the dependant circumstances connecting the transactions.

It is said the injunction should have been made perpetual. Where the material facts charged in the bill are denied by the answer, there can be no decree against it. [d] The equity was supposed by the chancellor who sustained the exceptions, to consist in, 1. The alleged compromise, 2. The making and indorsing of the notes by Fort, and 3. The making of the acceptance of the service of the writs in Georgia. All those grounds are disposed of by the answers. As to the effect of the judgments in Georgia, it is contended they are conclusive. If they are conclusive in Georgia, they must be so here; they must here have the same faith and credit as in Georgia. By the answer, it is admitted that the service was accepted by J. Lucas; but it is not admitted that the partnership was dissolved; and it is shewn that the complainant had notice of the pendency of the suit, and that he ratified and adopted the acts of J. Lucas, by pleading the judgments in his defence. The partnership being established, the acceptance of service by J. Lucas bound his copartner. [e] A partner is bound by the answer of his copartner in chancery; [f] he may authorize an attorney to appear, and the acts of the attorney will bind the firm. The change of residence makes no difference, and his being a copartner charges him with notice of all that was known to his copartner; what the agent knows, the law presumes the principal to know, and the knowledge of one copartner is the knowledge of both. There is no allegation that John Lucas had not authority to accept service. If the complainant made no defence, it is his own fault. [g]

There was no dissolution of the firm. The fact is obscurely charged, but is positively denied. To protect a retiring partner, there must be publication. [h] There must

JANUARY 1830.

Lucas
v.
Bk. of Darien.

a 1 John. Ch. Rep. 131.
10 John. Rep. 524.
b 2 John Ch. Rep. 89.
c 1 Cowen 711.

d 1 John. Ch. Rep. 211, 459. 2 Ib. 91, 148.

e Gow on Pt. 195, 56, 57
483. 19 John. 139, 2 Caines Rep. 255.
3 B. & P. 255.
f 2 H. & M. 577.

g Littells Selected Cases 26.
h Gow on Pt. 305, 306, 311. 6 John. Rep. 144. Chit. on bills 57 to 52. 3 Stark. Ev. 1076, 1081.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

be actual notice to those who have had previous dealings, and proof of publication in a gazette, as to subsequent dealers. The circumstances alleged in the bill from which notice is sought to be implied, are unknown to the law [a]

As to the ratification, and adoption by the complainant of the acts of John Lucas, adoption is either implied or express: Implied from circumstances, such as community of interest, long silence and acquiescence with full knowledge: Express adoption may be by pleading, &c. and adoption for one purpose is adoption for every purpose. [b] That John Lucas was a stockholder and director, is no notice to the bank. When he became a borrower, he ceased to be a lender; his interest became adverse to the interest of the bank. Besides, in the case of a corporation aggregate, the knowledge of one copartner, is not the knowledge of the others. [c]

Chancery cannot enter into the merits of the judgments at law, [d] and from the facts shewn, the judgments rendered in Georgia are conclusive. [e] They come within the most strict construction of the constitution and laws of the United States. It is not necessary to inquire into the cases where it is apparent no service or notice was had; and even if it were, embarrassing questions might arise. The presumption is, that every Court is the best judge of its own jurisdiction. [f] This Court cannot supervise nor correct the errors of Courts of other States; the exercise of such power would involve a legal absurdity. It would require that the doctrine of the supreme judicial tribunal of the Union, as laid down in *Mills v. Duryee* [g] should be overturned; and the construction of the paramount law by that Court, should be binding on all State Courts. [h] The Supreme Court of the Union acts on this principle; it does not presume to construe State laws; the Courts of Georgia are certainly best acquainted with its laws and practices. It is not because of their abstract justice, that the decisions of the Courts of other States should be enforced here, it is because they are *res adjudicata*; and if judgments of other States were merely *prima facie* evidence, and it were necessary again to prove the original consideration, the difficulties on account of absence and death of witnesses and loss of papers, &c. would amount to a denial of justice in many cases.

Then if the judgments in Georgia are conclusive, all the matters of the bill concerning their consideration, fall to

*a* 3 Kent Com. 1 to 25.

*b* John. Ch. Rep. 250. 3 Marshall 515. 1 Litt. 17,396. 1 Atk. 628. 2 Ib. 629. 2 Ves. 12,618. 1 Ves. jr. 122. 4 Bibb. 451. 3 Atk. 715. 2 H. & M. 391. 1 Peters U. S. Rep. 146. Paley on Agency 143, 145, 149, 150. 4 Cowen 24, 492. Gow. 59, 66, 70. 2 Strange 850. 10 East 378. 394. 9 Cr. 161.

*c* Paley 11, 35, 200. Note F. 203. 3 Ves. 202. 3 Atk. 294, 392, 650. 2 Ib. 242. Equity Cases Ab. 28.

*d* 7 John. Ch. Rep. 182. 3 Ib. 275. 2 H. & M. 139. 2 Munf. 1.

*e* 1 Starkie Ev. 242, 252. 1 Peters U. S. Rep. 686,328. 1 Mass. Rep. 299. 5 Litt. 349. 19 Jon. 162. 7 Cr. 481. 3 Wheat. 234. 17 Mass. Rep. 515. 2 Dallas 302. 4 Munf. 241.

*f* 4 Cr. 241.

*g* 7 Cr. 481. 3 Wheat. 234.

*h* 7 John. Ch. Rep. 303.

the ground. When the foundation of equity is taken away, all the dependent circumstances become immaterial, and it is unnecessary to inquire if they be answered or not. *a*

Every one is bound to take care of his rights in due season; and as from the record, it appears the appellant had an opportunity of defending himself, if he failed to do so, it is his own neglect, and under such circumstances equity can afford him no relief. *b* It is to be presumed that if the appellant had a substantial defence, he would have availed himself of it when sued on the seven notes; but instead of this, he takes shelter under the judgments rendered in Georgia, insisting they are good and valid while they protect him, and when they are used against him, he says they are void and of no binding effect. Doctrines which produce such a result cannot be sound, nor can they receive the sanction of any enlightened tribunal.

HITCHCOCK, in reply. If proper partie shad not been made, the proper course would be to reverse and remand, so that they might be made; but proper parties are made. The transactions concerning which a discovery is sought, took place between John Lucas and the branch bank; no answer is called for from the parent bank, but an injunction is prayed against the bank of Darien. This was sufficient. By statute, the clerk is required to issue subpœnas against defendants, *c* and it would have been necessary if the parties did not appear, but the bank voluntarily appeared, and twice moved to dissolve the injunction. This is a waiver of process, and should be so considered in a suit prosecuted by a complainant in good faith. *d*

When a Court of Chancery obtains jurisdiction for one purpose, it will retain it for all purposes, to do complete justice. *e* The defence at law is at least doubtful. The records from Georgia do not disclose who acknowledged service of the writs; it merely appears in the name of "J. & W. Lucas," but by which partner is not shewn by the records. Another ground of chancery jurisdistion is, that the plaintiffs at law are seeking to enforce an unconscientious claim, and to profit by a fraud.

It is said that the defence at law is not set out; true that is necessary in a bill of discovery, but this is not a bill of discovery. The bill seeks relief, and contains equity. It charges a change of pursuits by the appellant; his removal to Alabama before the legal existence of the bank, and other circumstances which afforded evidence of a dissolu-

JANUARY 1839.

Lucas
v.
Bk. of Darien.

*a* 2 Maddox 338.

*b* 1 John. Ch. Rep. 98, 165, 436. 2 ib. 228. 4 ib. 566. 6 ib. 87, 479.

*c* Laws of Ala. Dig. 492.

*d* 2 John. Ch. Rep. 217.

*e* 7 John. Ch. Rep. 149. 17 John. Rep. King v. Baldwin.

tion of the copartnership. The bank was guilty of gross negligence in not calling for any evidence of the existence of the copartnership under such circumstances, before discounting to so large an amount.

The defendants have not sufficiently answered the bill. A defendant is bound to answer fully, and if he sets up matter of avoidance, such matter must be proved. *a* Where a fact is averred in a bill, and denied in the answer, and the proof is in the possession of the defendanat, its production will be required as much as if it was to an affirmative independent fact. A party cannot be required to prove a negative. All the negative facts charged in the bill and which are denied by the answer, should have been proven at the hearing. On an inspection of the answer, it will be seen that each admission is pregnant with a denial. The answer should have stated the circumstances from which the knowledge of the defendant is derived, and should not have stated the conclusions of the defendant; or, it should have expressly admitted or denied facts.

One partner cannot delegate an authority to bind the firm by deed, even though in some cases he might himself have power to do the act.

It is said that by pleading the judgments in Georgia in his defence, the complainant has adopted them. This ground is untenable. It may be remarked that the exhibits are not proven; there is no certificate by the clerk of their verity. But if they were before the Court, it would make no difference. A defendant at law, may plead as many pleas as he thinks proper, and will not be precluded by any of them. A party is not bound by an admission made in the form of a plea, *b* nor can a party avail himself of such an admission made by his adversary. *c* Each plea must stand by itself. *d* The replication of *nul tiel record* was certainly as conclusive on the bank, as the pleas could possibly be on the appellant.

By JUDGE SAFFOLD. Previous to any examination of the merits of this cause, it is necessary to take a slight notice of the exceptions urged against the regularity and sufficiency of the bill. It is objected, that the bill is fatally defective in not having prayed process against the principal bank, as well as its branch; that all persons having an interest should have been made parties; that praying relief against the agent, does not make the principal a party, and that none can be regarded as a party.

*a* Campbell & Cambrelengs Dig. 403.

*b* 1 Starkie's Ev. 292, 2 ib. 28.
*c* 1 Starkie's Ev. 388.
*d* 1 Starkie's Ev. 21. 1 T. R. 125.

against whom process is not prayed. The injunction appears to have been obtained against the principal bank, for the reason that it was the true plaintiff in the suit at law; and process was issued against, and the discovery sought from the branch, because the contracts were made with it. I recognise as a general rule, in Courts of Equity, that all parties in interest shall be made parties to the suit, that the matter in controversy may be finally settled. Exceptions are allowed to this rule, when such party is not indispensable to a fair and full investigation, and where it is difficult or impossible to reach him. "The rule has been framed by the Courts of Equity themselves, and is subject to their sound discretion. It is not like the description of parties; an inflexible rule, the failure to observe which, turns the party out of Court, merely because it has no jurisdiction over his cause: but being introduced for the purposes of justice, is susceptible of considerable modifications for the promotion of those purposes."[a] In another case, the same high authority has said: "The rule which requires that all persons concerned in interest, however remotely, should be made parties to the suit, though applicable to most cases in the Courts of the United States, is not applicable to all. In the exercise of its discretion, the Court will require the plaintiff to do all in his power to bring every person concerned in interest, before the Court. But if the case can be completely decided, as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the Court cannot reach, as if such person be the resident of some other State, ought not to prevent a decree upon its merits."[b] Also, it has been ruled, that although an objection for want of proper parties may be taken at the hearing, yet the objection ought not to prevail on the final hearing on appeal, except in very strong cases, and when the Court perceives that a necessary and indispensable party is wanting.[c] Here, both the bank and its branch were beyond the limits of the State, so that the difficulty of making either a party, was about the same; it was competent to have made both, or either, a party; and it is not believed that Courts have authority to retain the rule where the rights of absent persons, who may be brought before them, are likely to be prejudiced; and that the bank of Darien, besides being injoined as plaintiff at law, is directly interested, is entirely evident. If this bill can be sustained on authority, without the bank being regu-

JANUARY 1830,

Lucas
v
Bk. of Darien.

[a] Mallow v. Hind. 12 Wheat. 197.

[b] Elmendorf v. Taylor. 10 Wheat. 167.

[c] The Mechanics Bank of Alexandria v. Louisa and Maria Siton, 1 Peters R. 306.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

larly made a party, I conceive it can only be on the principle that it has constructive notice, by means of the injunction against it, and the process to its branch; that being beyond the reach of process, it has notice, almost or quite, equal to any the Court is competent to give; that it is presumed to be safely represented by its branch as its agent, or more properly, by its general legal representative in all transactions originating in the branch; that the president and directors of the branch, as well as of the principal bank, are constituted a legal and corporate body, and are equally competent to represent the proprietors of the stock, in relation to all contracts made by them. As these contracts were made with the branch, and the facts in contest are presumed to be exclusively in its knowledge, it would appear that justice can scarcely be promoted by requiring the principal bank to be made a party. But the expression of any absolute opinion on this point, under the view I take of the case, is unimportant to the result.

Another objection urged against this bill is, that the nature of the defence relied upon at law, in aid of which the discovery is sought, is not set out. So far as this position is sustained in point of fact, the law is believed to be with the defendant in error. It has been ruled, that "a bill for a discovery and injunction at law, must state some particular matter which the complainant has a right to seek a discovery of, as material to his defence, and without which he cannot proceed to trial. A mere inquiry, because the grounds of the suit at law are unknown, cannot be maintained, being a *fishing bill.*"*a* Again, "if a bill seeks.discovery in aid of the jurisdiction of a Court of law, it ought to appear that such aid is required. If a Court of law can compel the discovery, a Court of equity will not interfere; and facts which depend on the testimony of witnesses, can be procured or proved at law." *b* And in another case it is said, "in a bill of discovery, for matters material to a defence at law, the nature of the defence at law must be stated, otherwise the Court will not grant an injunction." *c* Could the bill be regarded as one for general relief, the disclosure of the equity would be no less material. The force of this objection must depend on the view to be taken of the matters of equity relied upon by the bill. The grounds assumed are so far stated in the bill, as to give the Court an intimation of the nature of the defence and relief sought. The question is, are they sufficient to authorize Chancery interference; if so, for

*a* Newkirk v. Willett.
2 Caines Cas. in Err. 296.

*b* Gelston v. Hoyt.
1 John. Ch. Rep. 547.
*c* M'Intire v. Mancius.
3 John. Ch. Rep. 45.

what purpose and to what extênt? This will appear from
an examination of the assignments of error.

The points relied on by the errors assigned, are: 1. That the defendant below should, on the final hearing, have been perpetually injoined, inasmuch as the two main grounds of equity are admitted by the answer. 2. In case this assignment should not be supported, then that the exceptions to the second answer should have been sustained. 3. That the exceptions to the first answer, which were, overruled, should have been sustained.

The two main grounds of equity referred to, are understood to be, 1. That prior to the creation of these responsibilities, the partnership between J. & W. Lucas was dissolved; consequently W. Lucas was not bound by any of the acts of J. Lucas. 2. That some of the notes were drawn and others indorsed by T. Fort, as attorney for J. & W. Lucas; and when suits were commenced on the several notes, in the Superior Court of Baldwin county, Georgia, service of the writs was accepted in some instances by J. Lucas, in the name of the firm, and in the residue of cases, by T. H. Kenan, as attorney for the firm; that both Fort and Kenan acted by virtue of powers under seal, executed by J. Lucas, which acts are contended to have been void as against this plaintiff, as also the acceptance of service of the writs by J. Lucas, and that such would have been the case if the partnership had then existed.

These are facts charged, and supposed to have been admitted by the answer. The cause having been set for hearing on bill, answer and exhibits, and the decree of the Circuit Court having been rendered thereon, the present decision must be governed by the same evidence. First, as to the fact of the dissolution, the answer neither denies nor admits the due execution of the instrument purporting to be the dissolution, signed by J. Lucas; but disavows any knowledge concerning it. It however positively and absolutely denies any publication or notoriety of the dissolution, or any knowledge, or any privity of the fact, by the board of directors of the branch bank, if it did take place as charged; and insists that the articles of dissolution, if they can have any effect, can only be operative as between the parties to it; that it cannot affect the bank or any other creditor, for the want of notice, expressed or implied; and it is insisted in argument by this defendant, that to make a dissolution effective, there must be personal notice to those having previous dealings;

JANUARY 1830.

Lucas
v.
Bk. of Darien.

a 6 John. Rep. 144.

b 3 Cowen 38.

c See also Gow 305 to 311, and other authorities cited.

to subsequent dealers, proof of publication in a Gazette; and that the circumstances alleged in the bill, from which a dissolution is sought to be inferred, are unknown to the law.

In the case of *Ketcham and Black v. Clarke,* [a] where after the partnership had expired by the terms of its own limitation, one of the partners assigned all his rights, &c. in the partnership stock to the other, and the latter accepted a draft on the partnership, in the name of the firm, it was held that both partners were bound by the acceptance, there being no evidence of any notice of the dissolution, nor any special notice to the party dealing with the firm. In the opinion of the Court it is said, "we ought at least to go so far as to say that public notice must be given in a newspaper of the city or county where the partnership business was carried on; or in some other way, public notice of the dissolution must be given. The reasonableness of the notice may, perhaps, become a question of fact in the particular case. But public notice in some reasonable and sufficient manner must be given, and that will conclude all persons who have had no previous dealings with the firm; or if actual knowledge of the dissolution without such notice, is brought home to the persons dealing with the firm, such knowledge may be sufficient to conclude him. But as to persons dealing with the firm, public notice is not sufficient by the English law. The notice must be specially communicated to such individuals. These rules have been frequently and solemnly laid down as a part of the mercantile law of England on this subject. The necessity and justice of them call loudly for their sanction by this Court, for as Lord Kenyon observes, it would be the hardest measure imaginable upon the creditor, were the law otherwise; for while he supposed he was giving credit to a man having sufficient property to satisfy the whole of his demands, he might be trusting a beggar." Judge Kent [b] expresses his approbation of the rules here given, and says, "the principle on which this responsibility proceeds, is the negligence of the partners in leaving the world in ignorance of the fact of the dissolution, and leaving strangers to conclude that the partnership continued, and to bestow faith and confidence to the partnership name, in consequence of that belief." [c]

In this case, neither actual notice, nor publication of the dissolution, is charged by the plaintiff; but he contends

there was constructive notice, from the circumstance of his having removed from the State; and J. Lucas having engaged in the purchase and improvement of real estate in the town of Milledgeville. These indications are too dubious and unsatisfactory to warrant any legitimate conclusion. They are not incompatible with the continued existence of the firm. They may and often do occur during the continuance of such mercantile connections. They are not circumstances from which a legal conclusion can be drawn that the partnership had been dissolved, which was known to have existed, and while the commerce was continued by one of the partners in the name of the firm, as is sufficiently shewn to have been the case with these partners. The partnership could legally have continued after one of them had removed to England. The rule, as already expressed, that notice must be given, or publication made, or knowledge of the dissolution proven, is in all respects reasonable and convenient, and essentially necessary for the safety of creditors. This is a requisition which I consider equally sustained, both on principle and authority; and one we are bound to recognise as the method of dissolving a partnership, so as to affect the rights of indifferent persons; otherwise, real or fictitious partnerships, and secret or feigned dissolutions may, be made engines of the grossest injustice, fraud and oppression.

But it is also contended, that J. Lucas having been a director, the bank was affected with notice of the fact of the dissolution, &c. and therefore the complainant is entitled to a disclosure when he became so; and to all the benefit derivable from his knowledge of any material facts, as knowledge of the same in the possession of the bank; and that on this point the answer is indefinite and insufficient.

The right of the plaintiff to a further disclosure as to the time of J. Lucas being a director of the bank, cannot be material, as the unqualified admission by the answer, that he was a director, must be understood with reference to the time charged. To this it is answered on the part of the defendant, that when J. Lucas assumed the attitude of borrower, he ceased to be a lender; when he became a borrower, his agency was suspended, for his position was adverse to his principals interest; also, that in the case of a corporation aggregate, the knowledge of one corporator is not knowledge to the others. These positions, I think,

are fully sustained by the authorities cited, as well as by the intrinsic nature of the subject. Agents or trustees are incapable of negotiating with themselves, at least by private contract. It cannot be supposed that J. Lucas had any voice in granting the discounts to himself and partner. His agency in the directory was necessarily suspended during this negotiation. The knowledge of one member of a corporation can only amount to presumptive or constructive notice to the others, according to the circumstances of the case; and if it be the fact, that while J. Lucas was offering notes for discount in the name of the firm of which he was represented as a partner, he knew the partnership to have been dissolved, and that he had no authority to sign the partnership name, his situation and motives fully exclude the idea of his having communicated the facts to any others, so that the presumption of notice is entirely rebutted; and from his adverse interest and attitude, the principle of constructive notice cannot apply. I cannot, therefore, conceive that the fact of J. Lucas having been a director or stockholder, or both, during the time at which these discounts were allowed, can have any influence on the question.

The second branch of the plaintiff's first position, brings in question the legality or obligatory effect of the acts of the attorneys, in the execution of the notes and indorsements, and the acceptance of service of the writs.

It is contended that one partner cannot accept service for his copartner, nor bind him by deed or any specialty; also, that when service is accepted, the hand writing must be proved, and that not being shewn here, the Court below had no evidence of the service of the writs in Georgia. If the proceedings in that State cannot be regarded as judgments, constituting either conclusive or *prima facie* evidence of the debts, but on the contrary, are void, then, inasmuch as the records purport judgments, and are the foundation of the suits injoined, the plaintiff is entitled to relief against them in some tribunal; and unless he has an adequate defence at law, he may expect relief in chancery. That the ordinary and legitimate sphere of mercantile transactions is limited to simple contracts; and that the general power delegated by one member of a firm to another, by forming a mercantile connection, is equally limited; are propositions to which I readily assent. The consequence of which is, that one partner cannot directly bind another by deed; nor can he constitute an agent or

attorney with sufficient authority to bind the partner in any obligation in the nature of a specialty, unless the other has given special authority, or being present, consents by parol or otherwise, except that he may make any fair disposition of the partnership effects, or release a debt to the firm under seal, and make it operate against the whole.[a]

In this case, however, it is not contended that the complainant has been subjected to any immediate obligation by deed or bond, either by J. Lucas, the partner, or by either of the attorneys appointed by him. But it is said that the principles of the objection equally restrained J. Lucas from delegating by power, under seal, the authority to Fort, or Kenan, to sign or indorse the notes or accept the service of writs, or do any other act; that even an act which would be valid against the firm without a seal, if done by the partner, or by agent under a parol appointment, would be void, if executed by specialty. On this point, I think a nice discrimination is required. I take the distinction to be this : that if the bond or deed constitutes the contract, it must be made the evidence of it, and determines the remedy; then this principle applies, because the legal effect of the contract, the power of the remedy, and the rules of evidence are essentially different, the security being of higher dignity. [b] Here the objection relative to the sealed instruments is, that agents acted by virtue of powers created under seal by one of the partners. The only material question is, did those agents act with the consent, or by the authority of the firm. If one partner had power to constitute an agent in any form to do these acts, what injury can result, or how can it be material that the authority was given with unnecessary solemnity ? The acts done by the agents are in the same form, and have but the same legal effect, as if the authority had been given in any other way. It is usual and necessary, that partners in merchandize, should have agents or clerks, with authority to represent them generally. The act of signing notes, and giving indorsements in the partnership transactions, is a power falling within the usual scope of mercantile dealings ; each party can buy and sell partnership effects, and make contracts in reference to the business of the firm, and pay and receive, and draw and indorse, and accept bills and notes. [c] Hence, I am of opinion, that the appointment of Fort, and his acts, as attorney, in signing and indorsing the notes, are valid, and tantamount to an appointment by both members of the

38

JANUARY 1830.

Lucas.
v.
Bk. of Darien.

a 2 Caines Rep. 254, 5. Note A. and cases there cited, also 1 H. & M. 423. 19 John. Rep. 513. 3 Kents Com. 24.

b 3 Kent's Com. 24.

c Garard v. Basse, 1 Dallas' R. 119. 3 Kent's Com. 17, & references there given.

firm ; and that so much of the power as gave it the character of a deed, was unnecessary and irregular, and ought to be treated as surplusage, which does not vitiate. The authority to Kenan in like manner to accept service of the writs, is more questionable. Perhaps it should be considered a higher trust ; at least the authority is not so necessary or usual in mercantile transactions, and has been sometimes questioned. The cases referred to by the plaintiff's counsel in support of the general proposition, that one parter cannot bind another by deed, prove, as is contended, the insufficiency of such service on the principles of analogy ; that as one partner cannot, without the consent of the other, convey his real estate, or create any lien upon it by deed, he is equally incapable of effecting the same result indirectly, by accepting service of writs in the name of the firm, thereby facilitating the recovery of judgments against it. I cannot, however, admit the analogy in the unqualified sense contended for ; for true as it is, that one partner has not an unlimited authority to bind the firm, yet, it must be admitted, the nature of a partnership involves a trust and confidence in each member, sufficient, according to our polity, to enable a member, by some form of manœuvre to create legal liabilities against the firm, to the most injurious extent, as observed by Judge Kent : [a] " It is settled that each one, in ordinary cases, and in the absence of fraud on the part of the purchaser, has the complete *jus disponendi* of the whole partnership interest, and is considered to be the authorised agent of the firm. He can sell the effects, or compound or discharge the partnership debts. This power results from the nature of the business, and is indispensable to the safety of the public, and the successful operations of the partnership. A like power in each partner exists in respect to purchases on joint account, and it is no matter with what fraudulent views the goods were purchased, or to what purpose they were applied by the purchasing partner, if the seller be clear of the imputation of collusion." Such disposition may be made even under seal, and is obligatory on the firm ; and on the same principle, a sealed release by one, is operative against the whole. [b] It is also held, that a receipt given by one partner by way of set off, and in discharge of a private debt, is, if there be no fraud or collusion, a bar to an action by the firm. [c]

If it were admitted an available resistance could have been made pending the suits, to the service of the writs

in Georgia which purport to have been accepted by Kenan, as agent, or even those by J. Lucas, the question is conceived to be widely different, whether it can be done in the present state of the cases. It is urged in argument, that no injury can result to the plaintiff in error from the delay, because, having no legal service or notice of the proceedings, he had no opportunity to make defence. Whether this charge, that "he had no notice of said proceedings, and did not appear to make defence," is to be construed as a denial that service of the writs was legally perfected, or that he had no knowledge or information from his partner, or otherwise, of the pendency of the suits, the language does not define, but I would incline to the former construction. Under that view, from the facts of the case, the sufficiency of the service becomes a question of law, and in the dubious form of the charge, the answer is deemed sufficient to establish the fact of his having had all the notice or information of the pendency of the suits which was necessary to enable him to make any defence he could, either against the legality of the service, or the merits of the actions. Being out of that state, the writs could not have been personally served upon him, and constructive notice was all that could have been given in that state. The answer to this point is, "that the defendants cannot admit that no service was perfected on said complainant in said cases as charged in said bill ; nor can they admit that said complainant had no knowledge of the existence of said suits ; but on the contrary, they do know, and have been fully informed, and do verily believe that the said complainant was well apprised of the institution and progress of the said twelve cases in Georgia, and did advise his said copartner John to keep said suits off as long as possible, and consequently was enabled to make any defence thereto which he might deem expedient ; and said defendants further say, said complainant has since entirely ratified and confirmed the acts of said John in accepting service as aforesaid, by pleading the same in the Circuit Court of this state, in suits subsequently brought on the same notes."

It is true as contended, the answer would have been more satisfactory, had it stated the grounds or authority for this knowledge, information and belief of the notice ; but as the hearing was had and at the instance of the complainant on the bill, answer and exhibits, and the charge is also vague, the answer must be received as the best evi-

Lucas
v.
Bk. of Darien.

*a* Laws of Alabama, 454.

*b* 1 Chitt, Pl. 542.

*c* Le Conte v. Pendleton, 1 John. Cas. 104. See 1 Chit. 542 n. 107.

*d* ib. 543.

dence on the point. As to proof of the hand writing in the acceptance of the service of the writs, if it were admitted, that at law this proof should be required, I cannot conceive it material in Chancery, where the truth of the fact is fully admitted and charged in the bill, as is done in this case. It furnishes no grounds for the interposition of equity. Relative to the effect of the pleas in bar, the doctrine is, that in suits at law, the defendant may plead as many several matters as he may deem necessary to his defence, so that he be not admitted to plead and demur to the whole, &c. *a* It is substantially the same as the English stat. of 4 Ann. Under it, the decisions have been, that the defendant cannot plead *non assumpsit*, or *non est factum* to the whole declaration, and a tender as to part. *b* Also, it is held, that *nul tiel record*, and *nil debet*, cannot be pleaded together. *c* The defendant, however, is allowed; with a few exceptions, to plead the several different pleas to the same action, though they may be contradictory and inconsistent, as in trespass, not guilty, a justification, and accord and satisfaction, &c. Nor can one plea be taken advantage of to help or vitiate another ; for in general, every plea must stand or fall by itself. But when such pleas would create unjust delay, it is said the Court will sometimes rescind the rule to plead double, and compel the defendant to rely on one of his pleas. *d* But were the doctrine admitted *in extenso*, that a defendant may plead any number of distinct pleas, and that each is to be treated as a separate matter of defence, it is not applicable to, or decisive of the question before us. Here the plaintiff has pleaded these judgments in bar of suits brought on the original securities, has thereby adopted them into his use, and has derived a benefit from them, which he is unable, and unwilling to surrender. On the ground of the existence of these judgments, he has defeated a recovery in the former actions, and now to permit him to disavow their validity, would be to enable him to adopt and use, and reject them alternately, as his convenience might dictate, and exclude the merits of the demand in whatever shape presented.

The plaintiff, however, insists, that his bill does not shew there is a judgment in his favor in the suits brought on the notes in this state, and the answer setting it out, is new matter; and if the plea of former recovery binds him, the replication of *nul tiel record*, binds the bank. It is found the bill charges, that "in the year 1822, suits were

brought by the bank on seven of said notes in the Circuit
Court of Montgomery, Alabama, and that at March term,
1825, judgments were rendered in his favor; and that
subsequently, twelve suits were brought on the judgments
rendered in Georgia on the twelve notes," &c.  This is
deemed a sufficient recognition of the judgments, to con-
stitute an acquiescence in, and adoption of them, and to es-
top him from denying their validity in equity.  It has
been adjudged, that where an injunction has been volun-
tarily dissolved by the plaintiff, or having been dissolved
by an order obtained by his agent or solicitor, without his
knowledge or consent, but which was afterwards recog-
nised and acted upon by him, the injunction will not be
renewed upon his petition, without some new and spe-
cial reasons, which did not exist when the injunction was
originally granted or dissolved. [a]   An imperfect right or
title, or an invalid proceeding, may be ratified and con-
firmed by the acquiescence and adoption of the person hav-
ing the right to avoid them, or by his acceptance and en-
joyment of benefits under them. [b]   An administrator
who goes to trial upon a plea of payment, though in good
faith, and not knowing the effect of a finding against him
on that plea, on verdict against him, will not be relieved
by being permitted to plead *plene administravit*, although
he swear that he had a good defence upon this plea. [c]
The admissions of a plaintiff, or defendant, will, in general,
conclude none but himself, not his co-plaintiff, or defendant,
unless they are his partners. [d]   The principle that a de-
fendant may plead several pleas in the same suit, and have
the benefit of each, separately, has not, it is conceived, a
just application to the case, where, in a former suit, the
party has pleaded a matter of fact, succeeded in that suit,
and enjoyed a benefit from it, and afterwards seeks to
avoid the same matter by bill.   With respect to the effect
of the replication of *nul tiel record*, I am of opinion, equi-
ty can deny these defendants nothing on that ground.
They profited nothing by it ; it was appropriate and ne-
cessary to elicit a decision of the Court on the effect of the
record; without it, they must have withdrawn the suits
and waived the question; the decision was against them,
and they have proceeded to abide its consequences.

It is also objected, "that the answer sets up new mat-
ter in avoidance of the allegations in the bill; and that
those matters should have been proven on the trial; other-
wise, all the allegations in the bill may be admitted, and

[a] Livingston v. Gibbons, 5 John. Ch. Rep. 256.

[b] 2 H. & M. 391. 1 Peters' U. S. Rep. 146.

[c] Martin v. Sarles, 4 Cowen, 24.

[d] Dan v. Brown, ibid, 492. Vide the other author-ities cited to this point.

JANUARY 1830. yet be avoided by matter not responsive to the bill, and which would necessarily compel the complainant to prove a negative." I subscribe to the general principle, "that the answer of a defendant in Chancery, is not evidence where it asserts a right affirmatively in opposition to the plaintiffs demand. A case chiefly relied on in support of this objection, is, that of *Beckwith v. Buller et al.* [a] There, the bill was filed against Beckwith, as executor of his father, praying a distribution of his personal estate, and to set aside a deed made by the testator to the executor, for fourteen slaves, upon a suggestion of fraud in obtaining it. The answer denied the fraud, and contended the deed was but a reasonable provision for him, the heir of the family and title, otherwise unadvanced. He further alleged there was little other estate, except a debt due by bond, which his father gave him in his lifetime, as a compensation for his having consented to the sale of a large English estate, which would have descended to him. The Court recognised the general rule as above stated, and said, in such case "the defendant is as much bound to establish his answer by indifferent testimony, as the plaintiff is to sustain his bill ; and that it would be monstrous, if an executor, when called upon to account, were permitted to swear himself into a title to a part of his testator's estate:" and in a much later Virginia decision, [b] the same rule was adopted, and a title to real estate affirmatively asserted by the answer, in opposition to the plaintiff's demand, and which had not been advanced or charged in the bill, was rejected for want of other proof.

The extent and application of this rule, though supposed by Chancellor Kent, in 1816, to have been well settled, not only in the English jurisprudence, but equally in our own, has continued to present difficulties, and produce conflict of decision. In the case of *Hart v. Ten Eyck,* [c] the distinguished Chancellor alluded to, expressed his approbation of the rule as explained in a case before Lord Cowper, as early as 1707. In the old case, the bill had been filed against an executor for an account; he answered, that the testator left 1100*l.* in his hands, and that afterwards, on a settlement with the testator, he gave his bond for 1000*l.* and the other 100*l.* was given him by the testator for his care and trouble. There being no other evidence, the answer was put in issue; and "it was resolved by the Court, that when an answer was put in issue, what was confessed and admitted by it, need not be proved, but that

Lucas
v.
Bk. of Darien.

*a* 1 Wash.
Rep. 224.

*b* Paynes v.
Coles, 1
Munf. 395.

*c* 2 John. Ch.
Rep. 62.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

the defendant must make out by proof, what was insisted on by way of avoidance; that there was this distinction to be observed, that when the defendant admitted a fact, and insisted on a distinct fact by way of avoidance, he must prove it," &c. "But if the admission and avoidance had consisted of a single fact, as if he had said the testator had given him 100l. the whole must be allowed, unless disproved."

And Chancellor Kent remarks, "that the distinction in the application of the rule is not between Courts of law and equity, but between pleadings and evidence. If an answer is introduced collaterally, and merely by way of evidence in chancery, it ought to be treated precisely as in a Court of law. If in a Court of law, the plea confesses the matter in demand, but avoids it by other circumstances, the proof of avoidance is incumbent on the defendant; that the same distinction had been lately taken in the case of *Ormond v. Hutchinson*, before Lord Erskine;[a] that when passages are read from an answer which is replied to, and is not an answer to a mere bill of discovery, they are not read as evidence, in the technical sense, but to shew what the defendant has admitted, and which therefore need not be proved; that the only necessary explanation accompanying the rule is, that you must not stop short with a sentence, so as to garble a single fact, but you must read the answer so as to complete the immediate subject to which the defendant is answering." He also refers[b] to the case of *Thompson v. Lamb*,[c] in which Lord Eldon said, "he was clearly of opinion a person charged, cannot by his answer discharge himself; not even by his examination before the master, unless in this way; if the answer on examination states, that upon a particular day he received a sum of money and paid it over, that may discharge him; but if he says, on a particular day he received a sum of money, and upon a subsequent day he paid it over, that cannot be used in chancery, for it is a different transaction." To this I have only to remark at present, that it appears to me to be refinement, rather contracted. In the case under review, of *Hart v. Ten Eyck*, the bill required an account of the administration, &c. The defendant answered and exhibited an account, containing charges both in favor of, and against himself; on the debit side of the account, some of the items were not supported by proof, unless the answer was evidence. After an elaborate examination of the principle, the Chancellor

a 13 Vesey 47.

b Note A. 91.
c 7 Vesey 587.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

*a* Woodcock
v. Bennet,
1 Cowen 711.
and see note
A. 744.

ruled that the items in the adminitrator's account, which were without proof should be rejected, as new and distinct matter set up in avoidance. This decree, however, appears to have been reversed on this point in the Court of errors, but this latter decision has not been reported. It is only referred to in a subsequent case. *a* In this latter case the same principle was involved. The complainant claimed the benefit of articles of agreement, which the defendant had in his possession and contended had been rescinded by consent. The bill called him to answer the matters alleged, as to the making the contract, how it was disposed of, when, where, and how the defendant got possession of the agreement, and under what pretences. The defendant answered, that by the consent of all parties, the articles were taken up and rescinded; the seals being torn off by the express consent and agreement, and in the presence of the complainant. This part of the answer was held to be legal and competent evidence, because it was responsive to the bill, and within the discovery sought. The cases may not be strictly parallel; the objection in the case under consideration is perhaps more plausible than in the one last referred to. Here, however, the plaintiff charges as a material allegation in the bill, that at March term, 1825, judgments were rendered in his favor; unless this allegation was intended to imply a former recovery in his favor on the merits, and was offered as matter in bar, it is difficult to define its object, or it would appear to be nugatory. If it was intended as a bar to the defendant's right to prosecute his suit at law, and the latter was required to make answer to the fact of a former recovery, he could not, in justice to himself, admit the fact of a recovery simply, without stating also that the trial was not on the merits; and as he was required to answer respecting a part of the record, which would be indefinite and unintelligible alone, it would appear necessary that he should have described the whole, at least so much as would shew the legal effect of the part charged. I think it entirely equal to an averment that he, the defendant, had received a particular sum of money, and paid it over at the same time, and this expressed in the same sentence, which as it is shewn, has been adjudged proof. The whole force and effect of the judgments in question, are within the scope of the relief sought. I think it may be assimilated to a case in which the defendant is required to answer, if he did not owe a particular sum of money; and the answer is, that he

is under contract to pay that amount, but by the terms of the agreement it is to be paid in a currency under par, or that he did owe the sum, but has discharged the debt. In either of these supposed cases, the effect of the general admission of the charge cannot appear, unless in connexion with the explanation in avoidance. As to the difficulty or necessity of disproving this part of the answer, or the temptation to falsehood in relation to it, the subject is deemed peculiarly favorable to the answer; it refers by exhibiting a copy of the plea, to a record in the same Court, so that the proof was rendered equally accessible to either party, requiring only a reference to the records of the Court in which this suit was tried, for conclusive evidence on the point. The principle is the same in this revising tribunal, that it was in that, and if the proof was sufficient there, it is equally so here. I am also inclined to regard this, rather in the nature of a bill for an injunction and discovery, than for general relief; that its legal effects, so far as can be available, must be to make the chancery ancilliary to the law tribunal, by eliciting facts within the knowledge of the defendants, to be used as evidence in the latter. In this view of the case, the objection as to new matter in avoidance, is at least less appropriate than in a case proper for general relief. But another answer to this objection urged for the defendants, is not unworthy of consideration; it is, that their answer has not been legally put in issue. It appears that the cases referred to, in which the sufficiency of the answers as proof of the facts stated, has been denied, have been cases in which the answers have been put in issue, by which I understand, according to the practice in England, and most of the States, the complainant must reply; and although replications with us have been dispensed with by statute, yet I think the intention to contest the facts, must in some way be indicated, and it can be conveniently done according to the practice in some of the States, by setting the cause for hearing on bill, answer and proofs. [a] This cause appears to have been set down for hearing, on motion of the plaintiff, on bill, answer and exhibits, or at least, without other proof, or any leave to take testimony, and immediately on the dissolution of the injunction. The defendants may not have sought time or leave to take testimony; had they done so, perhaps they could have obtained it, but the course adopted by the plaintiff implied no intention to put

Lucas
v.
Bk. of Darien.

[a] Vide 7 John. Ch. Rep. 223. 1 Bibb 277.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

a 2 Wheat.
380.

b 1 Caines 461.

the answer in issue, and unless that was to be done, the defendants had no inducement to require other proof.

In the case of *Leeds v. The Marine Insurance Company,* [a] it was ruled that where a cause is set down for hearing on the bill, answer and exhibits, without other pleadings, the whole of the answer must be considered as true; and notwithstanding the difference in the form of practice, the principles of relief must remain in substance, the same. Justice appears to require, that the answer should be admitted or contested before the hearing, and in time for the defendant to procure any necessary proof at command. I am of opinion, therefore, that this objection ought not to prevail. That an answer in Chancery, if free from the objection noticed, is evidence for the defendant, and must prevail, unless disproved by two witnesses, or one with corroborating circumstances, is admitted to be a well settled rule.

It is further argued on the part of the plaintiff, that the judgments obtained in Georgia, on which the suits at law were brought, are void for want of jurisdiction in the Court there; and in support of this position, various authorities are cited; the highest and most recent of which will be noticed. The position rests on the facts already adverted to, relative to the plaintiff's non-residence in that State; the objections to the service of process, &c. from which it is contended, the Court had no jurisdiction of his person. The questions presented are, what is the effect of the judgments and how far is it competent for Chancery to interfere with the remedy sought at law upon them?

It is entirely clear, that the earlier doctrine on this subject has undergone, within the last ten years, important changes in several of the States, and particularly in the Courts of New York. The principle maintained in New York, in the case of *Hitchcock v. Fitch and Aikin,* [b] and in several other cases, and in other Courts near the same time, that a judgment rendered in another of the United States was to be considered in the light of a foreign judgment, and was only *prima facie* evidence of the demand, consequently that in an action of debt thereon, the plea of *nil debet* was good, or that the action might be in *assumpsit,* has been entirely exploded. This has been done mainly by force of the decisions of the supreme tribunal of the Union; and the different principle giving to such judgments, the conclusive effect of record evidence, where the proceedings

have been regular, the parties and subject matter within JANUARY 1830.
the jurisdiction of the Court, and personal notice given,
has been fully acquiesced in by several of the Courts, in- Lucas<br>v<br>Bk. of Darien.
cluding the Supreme Court of New York, that had held
the different doctrine. The same must be done by all
other tribunals, as well from the intrinsic correctness of
the principle, as the controlling influence to which the
Supreme Court is entitled on this highly important consti-
tutional question. In the case of *Borden v. Fitch,* [a] the    [a] 15 John. R.
Supreme Court of New York held a divorce in another    141.
State obtained by the husband, when the wife resided out
of the State, and had no notice of the proceedings, to be null
and void; because the Court pronouncing the decree had
no lawful jurisdiction of the case, when it had none over
the absent wife. It was considered to be a judgment ob-
tained upon false and fraudulent suggestions, and in *Hano-
ver v. Turner,* [b] the Supreme Court of Massachusets held    [b] 14 Mass. R.
a divorce in another State void, as having been fraudulent-    227.
ly obtained by one of their citizens, without a change of
domicil; and *Judge Kent* remarks, [c] "there is no doubt    [c] 2 Com. 91.
of the rule, that the allegation that a foreign judgment was
obtained by fraud, is admissible, and if true, it will de-
stroy its effect. All judgments rendered any where
against a party who had no notice of the proceedings, are
rendered in violation of the first principles of justice, and
are null and void. All sentences obtained by collusion
are mere nullities, and all other Courts may examine into
facts upon which a judgment has been obtained by fraud;
and that every party is at liberty to shew that another
Court was imposed on by collusion." These rules and
regulations have exclusive reference to judgments render-
ed by Courts having no jurisdiction over either the
parties or subject matter; and with reference to the latter
position, if the learned judge intended to apply the aver-
ments of fraud and collusion in trials at law on judgments
rendered in a sister State, I think he has ventured against
the weight of authority, as will appear from the further
examination of the subject. But as the authorities he cites
are mainly English, or early American decisions, and are
found to refer to foreign judgments, perhaps he did not.

In the case of *Andrews v. Montgomery, et al,* [d] it was    [d] 19 John. R.
ruled, that a judgment fairly obtained in another State, is    162.
conclusive evidence of a debt, and that an action of *as-
sumpsit* will not lie on such a judgment. Spencer, Chief
Justice, in delivering this opinion, remarked in reference

JANUARY 1830.

Lucas
v.
Bk. of Darien.

a 7 Cranch,
481.

to the decision of the Supreme Court of the United States, in *Mills v. Duryee* [a] "that independent of the consideration that a decision of the Supreme Court of the United States was entitled to the highest respect in all cases, a decision upon provisions of the Constitution was emphatically entitled to their utmost respect; that he considered that Court as paramount when deciding on an article of the Constitution, and an act of Congress, passed under its express injunction; and that whatever might be his individual opinion, he should feel it his duty to surrender it to their controlling authority; that he must however be permitted to say, that the opinion expressed by Mr Justice Story coincided entirely with his own private opinion, and that he never had believed the decision in *Hitchcock v. Fitch and Aikin* to be well founded." The case alluded to, of *Mills v. Duryee*, was on a judgment of the Supreme Court of New York, to which the defendant pleaded *nil debet*, which plea was held bad on general demurrer.

It may be here remarked, that the Constitution of the United States declares "that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State; and Congress may, by general law, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof:" and by the act of 1790, Congress provided for the mode of authenticating the records and judicial proceedings of the State Courts, and then further declared, that "the records and judicial proceedings authenticated as aforesaid, shall have such faith and credit given to them in every Court within the United States, as they have by law or usage in the Courts of the State, whence the said records are, or shall be taken." Story, Justice, observed, the decision of the case mentioned, depended altogether upon the construction of the Constitution and law of the United States, as above quoted, "that it was argued that this act provides only for the admission of such records as evidence, but did not declare the effect of such evidence when admitted. This argument cannot be supported. The act declares that the record, duly authenticated, shall have such faith and credit as it has in the State Court, whence it is taken. If, in such Court, it has the faith and credit of evidence of the highest nature, viz: record evidence, it must have the same faith and credit in every other Court. Congress

have, therefore declared the effect of the record, by de-
claring what faith and credit shall be given to it."

In this opinion it was further remarked, in substance, that
as the defendant had full notice, no doubt the judgment was
conclusive in New York, and must therefore be conclusive
in other States; "that whatever may be the validity of the
plea of *nil debet* after verdict, it could not be sustained in
that case. The pleadings in an action, are governed by
the dignity of the instrument on which it is founded. If
it be a record conclusive between the parties, it cannot be
denied but by the plea of *nul tiel record;* and when Con-
gress gave the effect of a record to the judgment, it gave
all the collateral consequences," that the proof by an ex-
emplification of the record is entirely equal to an inspec-
tion by the Court, of its own record. The right of the
Court to issue execution, depends upon its own powers
and organization. Its judgments may be complete and
perfect, and have full effect, independent of the right to
issue execution. By a majority of the Court, that judg-
ment was affirmed; and this is to be considered a leading
case on the doctrine most current at present throughout
the United States.

The case of *Hampton v. M'Connel,* [a] was, in all re-
spects, similar to that of *Mills v. Duryee.* Chief Justice
Marshall delivered the opinion of the Court, and said,
they could not distinguish the two cases; that the princi-
ple decided by the former, was, "that the judgment of a
State Court should have the same credit, validity and ef-
fect, in every other Court in the United States, which it
had in the State where pronounced, and that whatever
pleas would be good to a suit thereon in such State, and
none others, could be pleaded in any other Court in the
United States.

[a] 3 Wheaton, 234.

The case of *Shumway et al. v. Stillman,* [b] was debt on a
judgment from Massachusetts. The defendant pleaded
specially to the jurisdiction of the Court of Massachusetts,
that he had not resided in that State; but that he had been,
and then was an inhabitant and resident of New York; to
which there was a general demurrer. Sutherland, Justice,
in delivering the opinion of the Court, observed, "he could
not entertain a doubt on the principle; that in an action
on a State judgment, it is competent for the defendant to
shew by a special plea, that the Court in which the judg-
ment was rendered, had no jurisdiction, either of the sub-
ject matter, or of the person;" and to shew that the same

[b] 4 Cowe., 292.

**310**            CASES DETERMINED IN THE

JANUARY 1830.

Lucas
v.
Bk. of Darien.
─────────
a 9 Mass. Rep.
467.

principle prevailed in Massachusetts, he quoted the remarks of Chief Justice Parsons, in *Bissell v. Briggs,* [a] that "whenever a record of a judgment of any State is produced as conclusive evidence, the jurisdiction of the Court rendering it, is open to inquiry. If it should appear that the Court had no jurisdiction of the cause, no faith or credit whatever will be given to the judgment." Against the principle of the plea in the case in New York, the Court thought there was no objection. But that it did not state enough to shew that the Court which rendered the judgment had not jurisdiction of the person of the defendant. They said "every presumption was in favor of the jurisdiction of the Court; that the record was *prima facie* evidence of it, and should be held conclusive, until clearly and explicitly disproved; that the plea in that case might be literally true, and yet the defendant may have been personally served with process," &c. that an inhabitant of one State may, without changing his domicil, go into another; he may there contract a debt or commit a tort; and while there, he owes a temporary allegiance to that State, is bound by its laws, and is amenable to its Courts; that therefore the plea entirely failed in shewing the want of jurisdiction in the Court which rendered the judgment.

b In the case
of Biddle v.
Wilkins, 1
Peters' U. S.
Rep. 686.

The Supreme Court of the United States, as late as 1828, [b] ruled, "that when the Court in which a judgment has been rendered, had no jurisdiction over the subject matter of the suit; or where the judgment on which suit has been brought, is entirely void, this may be pleaded in bar, or may, in some cases, be given in evidence, under the general issue, in an action brought upon the judgment." And it recognised as a general rule, "that there can be no averment in pleading against the validity of a record, though there may be, against its operation;" and said, "it was upon this ground, that no matter of defence can be pleaded in such case, to a suit on a judgment, which existed anterior to the judgment; that it was sufficient, and had become the settled practice in declaring, only to allege generally, that the plaintiff by the consideration and judgment of that Court, recovered the sum mentioned therein; the original cause of action having passed in *rem judicatum.*" At the same time, [c] it was

c In the case
of Elliott et
al. v. Piersol
et al. 1 Peters' U. S. R.
340.

held, that "where a Court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment,

until reversed, is regarded as binding in every other Court. But if it act without authority, its judgments or orders are regarded as nullities; they are not voidable, but simply void; and form no bar to a recovery sought in opposition to them, even prior to a reversal." This is deemed a sufficient examination of the doctrine, to shew the nature of judgments from sister States; and from which, among others, I think the following conclusions result:

1. That a record of recovery, shewing that a Court of another State has taken cognizance of the matter, is *prima facie* evidence of its having had jurisdiction.

2. That a judgment of a Court of competent jurisdiction is valid, and binding in every other Court, until reversed, or otherwise vacated.

3. That a judgment or order of a Court, having no jurisdiction, is a mere nullity, but the non-residence of the defendant does not deprive the Court of jurisdiction where there has been legal service of process.

4. That a judgment of a Court in one of the States, appearing from an exemplification of the record, certified in due form, is entitled to the same credit, validity and effect in every other Court of the United States, that it had in the State where it was pronounced; consequently, if, in such Court, it has the faith, credit and effect of record evidence, it must have the same in every other Court.

5. That debt is the only proper action on a State judgment, and *nul tiel record*, the only proper general issue in such action; but it is not the only proper plea; for where the Court, in which it was rendered, has not jurisdiction, or when the judgment is otherwise void, this may be pleaded in bar, or may, in some cases be given in evidence under the general issue.

6. That there can be no averment in pleading against the validity of a record, though there may be against its operation.

Then, according to these principles of Chancery, and for the reason that the plaintiff had notice of the process, which, at least, is sufficient, when connected with the circumstance of his having adopted and ratified the recovery by pleading it in bar, and receiving the benefit of it in the former suits, I am of opinion, equity can afford him no relief on the ground of any alleged irregularity in the judgment or proceedings in the Court of Georgia.

With respect to any alleged compromise between the

JANUARY 1830.

Lucas
v
Bk. of Darien.

Bank and William D. or J. Lucas, or payments made by William D. or Hunter, the bill only prays a disclosure of the amount of payments made, and of the correspondence between the Bank and J. Lucas, touching the compromise and consolidation of said notes. In answer to which, the defendants make exhibits, which they say are full disclosures of those matters as far as they are known to exist. On this point, it is sufficient to remark, if these disclosures are material to the plaintiff in error, as evidence at law, he can in future avail himself of the full benefit of them. It is understood, however, the compromise is denied by the answer, and by the correspondence it is proved, and it is presumed the payments were susceptible of proof by the attorney who negotiated the settlements and dismissed the suits: if so, Chancery aid is unnecessary, and unauthorised; if not, the prayer for the discovery comes too late; it ought to have been sought pending the suits in Georgia.

But it is contended by the plaintiff, that equity having obtained jurisdiction, will retain the cause to do justice; 'to which it is replied, that from the disclosures of the answer, the plaintiff could have made his defence at law, while the cases were pending in Georgia; under such circumstances, equity can afford him no relief.

The doctrine is found to be, that a decision of a Court of competent jurisdiction, being *res judicata*, is conclusive and binding on all other Courts of concurrent jurisdiction;[a] that relief will not be granted for the purpose of a new trial at law, where the party lost his opportunity of defence by his own negligence;[b] that where there is neither accident nor mistake, misrepresentation nor fraud, Chancery has no jurisdiction to afford relief to the party, on the ground that he has lost his remedy at law, through mere ignorance of a fact, the knowledge of which might have been obtained by due diligence and inquiry, or by a bill of discovery.[c]

It is not the province of Chancery to revise judgments, or correct errors at law; the jurisdictions are, and ought to remain separate and distinct. Nor will it relieve against a judgment on the ground of its being contrary to equity, unless the defendant was ignorant of the fact in question, pending the suit, or it could not be received as a defence at law, or unless without any neglect or default on his part, he was prevented by fraud or accident, or the act of the opposite party, from availing himself of the defence.[d]

a Simpson v. J. Hart, 1 John. Ch. R. 91.

b Dodge v. Strong, 2 John. Ch. R. 228.

c Penny v. Martin, 4 John. Ch. R. 566.

d Foster v. Wood, 6 John. Ch. R. 87.

Therefore, it would appear from the view I have
taken of the subject, that the case presented by the bill,
answer and exhibits, does not authorise a decree for any        Lucas.
relief; that the circumstances do not create sufficient equity  Bk. of Darien.
in favor of the complainant; that there is no evidence of
fraud, mistake, trust or accident, sufficient to justify the
interposition of Chancery, and that if there be any fatal
irregularity in the judgments sued on, or if any material
discovery of facts has been obtained by this bill, the Court
of law, which has, and first had charge of the contest, is
the competent and only proper tribunal to adjudicate upon
them. On the 2d and 3d points relied on, it is sufficient
to add, that there is not conceived to be any material in-
sufficiency in the answers.

The large amount, near $40,000, contested by this
bill, the variety and intrinsic importance of the princi-
ples involved, united with the high professional attain-
ments elicited by the discussion, have demanded of this
Court a thorough investigation of the subject; and though
conscious I have been unable to do it justice, yet the con-
clusions to which I have arrived, are the best result of my
deliberate examination, and a due consideration of the
authorities.

I am therefore of opinion, that the decree of the Cir-
cuit Court, dismissing the bill, should be affirmed, and in
this result, the Court are unanimous.

By JUDGE COLLIER. The object of the complain-
ant's bill is, professedly, to transfer the causes pending at
law against the appellant, to the equity side of the Court.

It is no more a bill for discovery than every other bill
for relief, which calls upon the defendant to disclose by
his answer, facts and circumstances preparatory to such re-
lief. The bill alleges that the complainant is advised he
cannot make his defence at law, of the judgments
recovered against him; prays a perpetual injunction, and
for general relief. These features, it is conceived, deter-
mine its character to be that of a bill for relief. Besides,
it has none of the distinguishing characteristics of a bill
for discovery, technically so called. It does not state
the nature of the defence at law, to enable the Court to
judge whether the discovery sought be pertinent or ma-
terial to the issue. It does not shew whether the com-
plainant believes that he will be able to obtain a discov-
ery of the several matters charged, from the defendant.

JANUARY 1830.

Lucas.
v.
Bk. of Darien.

a 1 John. Ch.
Rep. 547. 2
John. Ch.
Rep. 45. 2
Caines'
Cases in Error 296.

In some of its statements, it is what Lord Thurlow called a *fishing bill,* in dealing in vague and general assertions, and calling on the defendant to answer them, without shewing their relevancy to the defence at law. In each of these particulars, it is defective as a bill for discovery. a

Having determined the character of the bill, the first question that arises is, whether it shews a title to relief in equity. In the distribution of the subjects cognizable by the laws of the country, some pertain exclusively to the courts of law, some concurrently to law and equity, and others exclusively to equity. With regard to the first, equity never interferes; as in the ascertainment of damages for a personal injury. In relation to the second, either Court sometimes acts; as in matters of account; but the Court which first acquires jurisdiction, makes a definitive disposition of the subject; unless some question shall arise peculiarly proper for the determination of the other. The third belongs exclusively to equity; as all cases of trust. Equity interposes its aid, when the defence is difficult or doubtful at law. This difficulty or doubt is not understood as relating to the proof alone, but to the form or nature of the defence also. If it be difficult or impracticable to procure the necessary proof to sustain the legal defence, and the material facts rest alone in the knowledge of the plaintiff, the defendant may elicit from him a disclosure, by exhibiting his bill in equity, in aid of the law forum. But when the defence is full and complete, then equity cannot wrest from it the decision of the cause. The rules which obtain in equity are fixed and ascertained with as much certainty as those which prevail at law; and before a party can legitimately invoke their assistance, he must bring himself within the scope of the principles on which they are founded. Without attempting in this place, to give to these general propositions a particular application, I proceed to consider the bill in its details, not however in the order in which they are presented, but as the assumed equity of the case may seem to require.

If it be true as alleged by the appellant, that he was not amenable to the bank in the Court in Georgia which rendered the judgments against him, it is competent for him to shew that fact in his defence at law; and though the record may shew that service of process was regularly effected, the appellant cannot be thereby foreclosed from proving the reverse to have been true, unless he had ap-

peared, and defended the actions there, which he seems JANUARY 1830.
not to have done. The character of judgments rendered
in a sister State, has been frequently considered and adju- Lucas
dicated on. In *Mills v. Duryee*, *a* it was held that *nul* v.
*tiel record* is the only proper general issue in an action of Bk. of Darien.
debt upon such judgments. In that case the fact of notice *a* 7 Cranch,
was not controverted, and the proposition established by 431.
the Court seems to have been predicated upon the ground
that the defendant was advised of the proceedings against
him; thereby authorising the inference, that if the de-
fendant was not amenable to the jurisdiction of the Court
in which the judgment was recovered, the judgment is not
evidence of a character so dignified as to exempt it from
attack by other pleas. In *Borden v. Fitch*, *b* the Court *b* 15 John. R.
say "to give any binding effect to a judgment, it is essen- 141.
tial that the Court should have jurisdiction over the person
and of the subject matter; and a want of jurisdiction is a
matter that may always be set up against a judgment when
sought to be enforced, or when any benefit is claimed
under it. The want of jurisdiction makes it utterly void
and unavailable for any purpose." In *Andrews v. Mont-*
*gomery*, *c* Chief Justice Spencer, in delivering the opin- *c* 19 John. R.
ion of the Court, says "that this Court in *Borden v. Fitch* 162.
did not believe that the decision in *Mills v. Duryee* was
intended to be carried so far as to preclude the party
against whom it was rendered, from shewing that such
judgment was fraudulently obtained, or that the Court had
not jurisdiction over the person of the defendant." With
these qualifications, we are bound by the authority of that
case to consider a judgment fairly and regularly obtained
in another State, as full and conclusive evidence of the
matter adjudicated. In *Bissell v. Briggs*, *d* Chief Justice *d* 9 Mass. R.
Parsons says, "the public acts, records and judicial pro- 467.
ceedings contemplated by the constitution and laws of the
United States, and to which full faith and credit are to be
given, are such as were within the jurisdiction of the State
whence they shall be taken. Whenever, therefore, a re-
cord of a judgment of any Court in any State is produced
as conclusive evidence, the jurisdiction of the Court ren-
dering it, is open to inquiry. If it should appear that the
Court had no jurisdiction of the cause, no faith or credit
whatever will be given to the judgment." Again, the
learned Judge says, "if a Court of any State should render
judgment against a man not within the State, nor bound by
its laws, nor amenable to the jurisdiction of its Courts, if

JANUARY 1830.

Lucas
v.
Bk. of Darien.

a Cowen,
292.

b Ante p. 124.

that judgment should be produced in any other State against the defendant, the jurisdiction of the Court might be inquired into, and if a want of jurisdiction appeared, no credit would be given to the judgment." These decisions, in the late case of *Shumway & others v. Stillman*, [a] were considered by the Supreme Court of New York, and recognised as being founded in correct principle. And this Court in *Hunt & Condry v. Mayfield*, [b] were of opinion that the law is correctly laid down in that case.

But apart from express authority, it would seem that upon principle, it was competent for a defendant to avoid a judgment by shewing his non-amenability to the forum that rendered it; unless it appeared from the record that the question of jurisdiction had been directly determined against him. The principle on which judgments are holden to be conclusive, is, that the facts and recitals they contain, are supposed to have been adjudicated by a Court of adequate powers; and were they to continue open to a re-investigation, there would be no end of litigation. This being the reason why judgments as evidence are of a character so conclusive, or evidence at all, it follows that they are no evidence of matters which do not appear to be *res adjudicata. Cessante ratione legis cessat ipsa lex.*

In my opinion then, the jurisdiction of the Court that rendered the judgments, is a fit subject of inquiry at law. The relief is there ample, and consequently the assistance of equity cannot be given. If then the judgments are void, there can be no resort to equity; and if valid, the appellent cannot then be heard, because he shews no sufficient reason why he did not defend before judgment. The want of personal notice of the pendency of the actions, can avail nothing, unless for that cause, the judgment be void, which I have already said, can be inquired of at law.

The question as to the conclusiveness of the judgments having been disposed of, and this being the ground assumed why equity shall entertain jurisdiction, I might close this opinion; but supposing such a course to be desirable to the parties, I proceed to consider other points presented, and which may arise in the further progress of the cause.

Though there can be but little difficulty in determining what is a dissolution of a partnership *inter partes*, the older authorities made it somewhat a perplexed question, as it respects third persons. The perplexity is, however,

removed by more recent adjudications, and the question JANUARY 1830. may now be considered as settled. In *Lansing v. Gaine, et al.* [a] *Martin v. Walton,* [b] and *Mowatt v. Howland,* [c] it is held that notice in the public papers is conclusive upon all persons who have had no previous dealings with the partnership. But as it respects those who have had dealings with the concern, during the existence of the partnership, actual notice must be given to them, or facts of an equivalent import must be proved by the outgoing partners, to exempt them from liability on engagements entered into by any of the partners after dissolution. There are several circumstances which would be equivalent to an actual notice from the concern; as the reading from a public paper an advertisement, by which the world were advised of a dissolution; yet the general notoriety of the fact of dissolution is not sufficient where no actual notice has been given, and no advertisement published. [d] The Court of King's Bench, in *Wright et al. v Pulham,* [e] have recently decided that notice in the Gazette is notice to all the world of the dissolution of a partnership. The notices which I have seen of this case, mention it as being so unsatisfactorily reported, as to make it of little authoritative value. The opinion of the Court is sustained by no argument, and explained by no statement of facts; so that it is impossible to say whether or not the action was instituted by one having no dealing with the partnership during its existence. That Court could not design to overrule the whole current of its former adjudications; if it had, it would doubtless have reviewed them, and endeavored to shew that they were not founded on correct principles. I am constrained to believe, that could the facts of that case be known, it would be found to be a suit prosecuted by one having no transactions with the partnership anterior to its dissolution, and that the decision should be considered as settling the effect of a newspaper notice as to such persons, which before was not well ascertained by the decisions of that Court. What I have said may suffice to shew what circumstances are essential to make a dissolution effectual against all persons. I now proceed to inquire whether the statements contained in the appellants bill can be considered as having an equivalent effect.

A change of pursuits cannot be held as tantamount to a notice to all mankind, that the appellant had withdrawn from the firm, and revoked the authority of his partner

Lucas
v.
Bk. of Darien.

a 2 John. R. 300.

b 1 M'Cord, 16.

c 3 Day's Rep. 353, and 6 John. R. 147.,

d Peake's Cases, p. 42.

e 2 Chitty's Rep. 121.

to pledge his responsibility for engagements in their joint names. It is not unusual for capitalists to adventure their funds in commercial undertakings where they themselves lend no personal agency to promote their success. And it is frequent among *mercantile* gentlemen to lend their names to their friends (when they have no beneficial interest) that the friend may obtain a more extensive credit, and he whose name is thus lent, is bound to comply with the engagements of his friend, made in their joint names, with respect to those who have no notice of his want of interest.

Nor can a change of residence be held to furnish satisfactory proof of the dissolution of a partnership. It may be thought promotive of the interest of their concern, that the partners should live in different places, and it is by no means unfrequent for them to be concerned in mercantile houses in different countries at the same time. To hold these circumstances, (equivocal at best,) on which the appellant seems to rely as evidencing a dissolution, to have that effect, would be to disregard the rules of law upon this subject, and it would be difficult, if not impossible to say upon what principles such a decision was sustained.

It is insisted by the counsel for the appellant, that though there may have been no sufficient notice of a dissolution as to persons *in fieri* when it is said to have taken place, yet, that notice in a public paper was not necessary to prevent a recovery by the bank of Darien; because it had no legal existence at that time. I cannot comprehend the force of this argument, and the most mature deliberation convinces me that it is not sustainable. With equal justice might it be said that notice of dissolution was not necessary with respect to those who migrated to Georgia subsequent thereto, or to infants who after that event had attained the age of legal discretion; this, I apprehend would not be contended for. The principle of the rule which requires notice, actual or constructive, being general in its application, the rule itself must operate co-extensively. The appellant does not allege a notice to the bank of Darien, of the dissolution of the firm of J. & W. Lucas, and the circumstances examined are not, in my judgment, any notice of that fact.

Upon the hypothesis that as it respects that corporation, the partnership is still continuing. I will now consider whether a partner has any authority as such, to acknowl-

edge service of process in the name of the partnership, or JANUARY 1830.
whether he has the right to delegate that power to an at-
torney appointed by him.   The course pursued in Eng-
land, where service could not be effected on all the part-
ners, by reason of the non-residence of any of them, was to
outlaw those who were not served, or distrain the joint
effects in that country.   The partner who was served,
might, however, if he thought proper, enter an appearance
for those who were not served, and his act would be bind-
ing upon them. *a*  In *Taylor v. Coryell & Co.* *b* recently
determined in the Supreme Court of Pennsylvania, Judge
Duncan, in delivering the opinion of the Court, says "it was
formerly considered in our Courts by very eminent Judges,
that one partner could not enter an appearance for another
to an action. *c*    But this is not the law at the present day,
and it would be most inconvenient if it were."   The
learned Judge says again, "it is now held that in an action
against several partners, one may enter an appearance
for the others; which may in its consequences lead to a
judgment against all; *d* and it is certainly most reasonable,
convenient and consistent with the general authority of
partners."   I understand the authority of one partner to
appear for his co-partner, to be well ascertained by judicial
decision; though it must be contended that there is some
opposing authority; and it seems to me, that the principle
which sustains this rule, applies with equal force to the
acceptance of service of process.   The entry of an appear-
ance where there has been no service, is an act more
binding in its character, and in fact includes the service of
process.   Every decision, therefore, which maintains the
authority in the one case is conclusive as to its existence
in the other.   If service is accepted, judgment may still
go by default, and the defendant may avail himself of le-
gal exceptions which would be aided by an appearance.
Hence I have no difficulty in attaining the conclusion that
one partner may acknowledge service of process for the
firm.

The right of one partner to appoint an agent to conduct
the business of the concern, results unquestionably from
the genuine authority of partners.   *Tillier v. White-
head.* *e*  And the acts of such agent within the scope of
the power given, will be as obligatory on the firm as if
done by him who gave the authority.   It follows from
this proposition, that the acknowledgment of service of

Lucas
v.
Bk. of Darien.

*a* Nicholson,
v. Bownas, 3
Price, 263, &
Devenyhouse
v. Graham,
Ibid, 266. n.

*b* Gow on
Partnership,
Appendix,
483.

*c* Hills v.
Ross, 3 Dal.
331. (Dicta
of Iredell &
Chase, Jus-
tices.

*d* Harrison v.
Jackson, 7 T.
R. 108, dic-
tum of Dam-
pier, in argu-
ment, and
Gow, in his
late Treatise
on Partner-
ship, so lays
down the
law.

*e* 1 Dall. 269.

process by T. H. Kenan in the name of J. & W. Lucas, under an authority from John Lucas, is effectual.

Lucas
v.
Bk. of Darien.

As an exception to the general authority of partners, it is a correct proposition that even in the course of their commercial dealings, one partner cannot pledge the responsibility of the firm to a compliance with engagements entered into in the partnership name by writing under seal. This exception is founded upon technical reasons, and on the general policy of the law. Such power, it is said, would have a most mischievious tendency, as it would enable a partner to give to a favourite creditor, a security on the real estate of his co-partner, and for the additional reason that the consideration of specialties is not open to inquiry in a Court of law. The latter reason does not obtain in this country to the full extent. In actions founded on bonds, it is competent for the defendant to impeach their consideration by special plea. *a*

*a* Laws of Alabama, 462.

If the question can here be considered *res integra*, and a fit case was presented, I should be inclined to modify the exception, that it might conform to the reasoning on which it is founded.

The question presents itself: does the power of attorney made by John Lucas under his seal in the name of J. & W. Lucas to Tomlinson Fort, to make or indorse notes in their names, come within the principle of this exception. I frankly acknowledge that on this point I have had more difficulty in attaining a satisfactory conclusion than on any other feature in the cause. The first inclination of my mind was, that the objection did not avoid the notes made under the power, as to the appellant; and that inclination has not been removed by more mature reflection. Though the power be void as to the appellant, it does not necessarily follow that every thing done under its authority is also void, if it be valid against John Lucas who sealed it. Such a conclusion would suppose that a partner in giving an authority to do any act in the partnership name, must employ the name of his co-partner. This is not the law. It is competent for him to give an authority to transact business for the firm without using the firm name. If then the power of attorney to Fort be avoided as it respects its execution by the appellant, it is still obligatory upon John Lucas, and must be considered as an authority from him to make and indorse notes in the name of J. & W. Lucas. The use of a seal does not forestall the appellant in any legal defence to the

notes, or in any degree enhance their dignity as securities for money; they cannot be any thing else than promissory notes, and open to any available exception that may be urged against that species of security.

The proposition that a partner cannot bind his copartner by seal, cannot be carried to every supposable case in which a seal is used. In *Salmon v. Davis,* [a] it is held that a partner may, by writing under seal, release a debt due to the partnership. The principle of that decision is, that the discharge would be equally valid without the use of a seal. In *Buchanan v. Curry,* [b] it is to the same effect. And as the power under seal does not give a right to do an act of a character more obligatory than it would, if divested of that solemnity, the cases just referred to, are in point in principle. [c]

It is argued by the appellant that as John Lucas, who was a director of the branch bank at Milledgeville, was advised of the dissolution of the partnership of J. & W. Lucas, the bank itself had constructive notice of that fact. I am unprepared to accord to this argument any weight. It is unreasonable to suppose that he made any disclosure to the directory which would have rendered his applications for discounts unavailing. Besides, to give the argument any degree of plausibility, we must suppose that as a director, he passed upon his own applications; natural justice, sustained by that delicacy common to the human family, forbids such an idea. With regard to his solicitations for loans, his attitude in relation to the bank was changed, he was a borrower and not a lender, and as he was passive, it was unreasonable that the directors who gave him accommodation should be affected by a constructive notice of any fact which he individually possessed.

If an agent acquire a knowledge of a fact while not in the discharge of his duties as such, but when engaged in other business, his principal cannot be presumed to have that knowledge; [d] and were it otherwise, the doctrine would be mischievous, for then it would be most dangerous to employ counsel of the most practice and greatest eminence. Let this exception be applied. Did John Lucas learn the dissolution of the partnership of J. & W. Lucas as a director of the branch bank? If their connection was really dissolved, he became apprized of it in his individual capacity; consequently his principal did not become affected by notice to him.

JANUARY 1830,

Lucas
v.
Bk. of Darien.

[a] 4 Binney, 375.

[b] 19 John. 137.

[c] 19 John. 537.

[d] 3 Atk. 294.
Ib. 392, 650.
2 Atk. 242.

JANUARY 1830.

Lucas
v.
Bk. of Darien.

a Paley on A-
gency, 203.

Again: so far as I have been able to gather from author-ity the reason of presumptive notice, I am of opinion that it is never implied where he who had actual notice, had no right to act in regard to the subject to which it re-lates. [a]  If in this idea I be correct, it follows that a no-tice of the dissolution of the firm to any number of the directors, less than a majority of those acting, would not affect the bank; because a minority could not controul its operations.  This argument does not conflict with the rule that a notice to one partner is a notice to the part-nership, for the reason that each of the partners may conduct the partnership business without the positive con-sent of the others, but the reason of the rule in that case does not apply to a corporation aggregate, as is obvious from the dissimilarity of the relationship of the individual corporators.

As another ground for the interposition of equity, the appellant insists upon the payments made by William D. Lucas, and his release from further liability on the notes to which he is a party.  It does not appear from the bill whether the payments were made before or after the re-covery of the judgments by the Bank against J. & W. Lucas; and if previous, whether the appellant has not been allowed credit therefor.  If they were made since, he may plead them, and be allowed all benefit at law.  If he cannot shew the fact of payments, and the amount paid, by legal testimony, he can compel a discovery from the bank, in aid of the trial at law.  In respect to the release, this cannot prejudice the appellant's rights.  Though William D. Lucas appears to be the maker of some of the notes, and an indorser on others prior to the appellant, yet the appellant alleges that the proceeds were received by John Lucas.  Thus it appears that the name of William D. Lucas was lent to J. & W. Lucas, to enable them to draw money from the Bank; and he could not be liable to them as the maker or prior indorser of some of the notes, because there would be wanting a consideration to support a promise. The release, therefore, of W. D. Lucas, does not entitle the appellant to a hearing in equity.

What I have said in regard to the payments by W. D. Lucas, is applicable to the payments by A. R. S. Hunter.

The judgments cannot be avoided in equity as to the ap-pellant because they were taken against J. & W. Lucas, after the death of John Lucas.  The objection, if it be

available, is too technical for equity to notice; but should
be pursued in the Court that rendered the judgments.

With respect to the arrangement between the branch
bank and J. Lucas, for an extension of the time of pay-
ment of the notes described in the appellant's bill, and the
giving of a new note for the aggregate amount, that cir-
cumstance cannot in my judgment warrant the interference
of equity.   If the Court in Georgia had jurisdiction of the
person of the appellant, the judgments are valid, and I
have already shewn that in my opinion it was competent
for his co-partner to give it, though he may not have had
actual notice of the pendency of the suits, yet he must
nevertheless be bound by the judgments as having a con-
structive notice through the agent of J. & W. Lucas,
or his partner John Lucas, who *pro re nata* was his
agent; and could it have availed the appellant, he should
have shewn on the trial in Georgia, that a new note was
given.   Besides it would not be compatible with the
principles of equity to give the appellant a hearing for
this cause, unless he first pays, or shews a readiness to pay
the consolidated note.   If it be outstanding, he can *prima
faxie* sustain no injury.   The Court will presume the
common law to prevail in Georgia, and consequently,
that the bank cannot make any transfer which will preju-
dice the legal rights of the appellant.   But if the appellant
deemed it necessary for his indemnity, he could obtain a
decree to have the note delivered up to be cancelled, and
perhaps under some circumstances equity might injoin a
judgment until this was done, but that Court would never
arrest a trial at law for this cause.   If the judgments are
void, the appellant cannot be heard in equity as already
shewn, because the defence is properly at law.

Having examined the material points presented by the
bill, I proceed to consider several propositions which were
laid down in argument.

It is insisted by the counsel for the appellant, that as the
appellee has submitted to answer the appellant's bill, the
answer should fully respond to its allegations.   This is
doubtless a good general rule, but subject to many excep-
tions; thus if a bill was exhibited alleging an equitable
title in the complainant, and praying a discovery of profits,
if in his answer the defendant was to deny the title, he
need not answer as to the profits, or if to a bill charging
a partnership and asking a discovery of accounts, the de-
fendant was to deny the partnership, he need not disclose

the state of accounts; were it otherwise, the wealth and dealing of every commercial house in the country could be ascertained. So I understand if a bill wants equity, an exception to the answer for insufficiency, would not be allowed to any answer that the defendant might make. In determining upon the sufficiency of an answer, the Court must be guided by the equity of the bill, and not by its formal allegations. Why to such a bill require a full answer? Such a requisition would be ineffectual, and one from which no benefit could result to the complainant, as the Court could not render a decree in his favor. This rule has been so fully considered in New York, that without remarking further upon it, I refer to the cases cited to sustain the view which I have taken. [a]

*a* 1 John. Ch.
R. 65. 4 John.
Ch. R. 205, &
the English
decisions
there reviewed by the
Chancellor.

With respect to the plea of "former recovery," pleaded to the actions brought on the notes in Montgomery, it cannot have any influence upon the defence now attempted to be made to the actions upon the judgments. That plea only tendered an issue upon the fact of the recovery, and not its legality; the apparent regularity of the judgments, and nothing more. The replication to that plea was *nul tiel record*, which limited the inquiry of the Court to the disclosures made by the record. If a plea in one cause be evidence in another between the same parties as an admission of a fact, a question which need not here be determined, it can only be taken as proof of the extent of its allegations, or of the legitimate inferences therefrom. It does not necessarily follow, that because judgments were recovered by the bank of Darien, against the appellant, that therefore, the appellant was amenable to the jurisdiction of the Court that rendered the judgments. On the issue of *nul tiel record*, nothing need or can be inferred, but what the record discloses.

It is insisted by the counsel for the appellee, that the decree of the Court below should be affirmed, because the bank is not made a party to the suit. The bill recites the pendency of the suit at law in favor of the bank of Darien against the appellant, and prays that the bank may be injoined from its further prosecution, and that a subpœna *ad respondendum* may issue to the branch. It is a rule well ascertained, that none are defendants, but they against whom process is prayed. [b] This is certainly a convenient rule, and it seems to me the only safe one by which, in many cases, it can be determined who are defendants. The "act to regulate proceedings in chancery suits," passed

*b* 1 P. Wms.
593. 2 John.
Ch. Rep. 245.

1st January, 1823, it is conceived, has no influence upon the question. The first section of that act requires the clerk to issue a subpœna, with a copy of the bill, to the defendant, without furnishing any *data* by which we can know who is the defendant, leaving that to be determined as before.

It is a general rule that all persons interested, should be made parties to a suit in chancery. This is, however, said to be a rule adopted for convenience, and may be dispensed with when extremely difficult or inconvenient to be adhered to. The principle upon which it is founded, is the solicitude of that tribunal to prevent litigation; by making its decrees operate efficiently upon all whose interests are involved, which can only be done by bringing them directly before the Court, that they may have an opportunity of defending their rights. The difficulty or inconvenience of making one a party, must be suggested by the bill, that it may be inquired into. In this case we are not informed why the bank of Darien was not made a defendant. According to the English practice, a locality beyond the jurisdiction of the Court would, in some instances, be a sufficient reason for not making a person in interest a party to the bill. But in this case the appellant cannot claim the benefit of this exception. Where is the greater difficulty in eliciting from the bank an answer to his bill, than from one of its branches? Both are located within the limits of another sovereignty, so that process of subpœna could not be executed on their officers. The same course must have been taken to have obtained the answer of either, and consequently, the argument of difficulty or inconvenience has no just foundation.

Without further considering exceptions to the general rule, I am of opinion that the rule itself may be so particularized as to become universal in its application. By requiring all persons interested in the matter involved in the issue, and necessarily to be affected by the decree, to be brought before the Court, the rights of all parties could be adjusted, and a complete definitive decree made upon the matters in question. Let us inquire whether the rule as thus particularized, embraces the case we are considering. The bank of Darien is the plaintiff at law, and the bill of the appellant is exhibited with the view of defending himself against its actions: the bank then is an essential party,

JANUARY 1830.

Lucas
v.
Bk. of Darien.

and directly interested in the issue. In fact, no efficient decree can be rendered without affecting its rights. If the Court were to proceed to decree in favor of the appellant upon the case presented, the decree could be no evidence against the bank, for the palpable reason that it has had no opportunity of being heard.

In my judgment, the branch bank could in no event, be made a defendant as such, though no discovery could be had from the parent institution, unless it was incorporated; it does not appear from the bill that it was a corporation, but it would rather seem that it was an office of discount and deposite, established by the bank under the authority of its charter, for the purpose of extending and facilitating its operations. This supposition is strengthened from the circumstance, that the notes of J. & W. Lucas were sued on in the name of the bank, and before the officers of the branch could have been made parties, the appellant should have shewn that it was necessary, in order to an adjustment of his rights. No necessity appears from the record, it may therefore be fairly presumed that the bank itself was the only essential party, and that the books and papers of its branch were subject to its examination and control.

Although an essential party were not before the Court, if the equity of the case was with the appellant, a dismissal of the bill generally, would not be the proper decree. The Court should decree that the bill stand over for parties, or have dismissed it without prejudice. *a*

Many points were raised in argument, on which the ulterior progress of the cause at law cannot require an expression of opinion. Others are dependant upon those considered, and fully answered by the view taken of them. I have expressed an opinion upon some topics which I might have forborne to notice, but as they were discussed, and are presented by the record, I deemed it proper to examine them with a view to settle the rules of practice upon the points they embrace; I have been more elaborate than I could have wished, but as the case is in many respects *res integra* in this Court, it is proper that argument and illustration should be employed that it may appear by what reasoning my opinion is sustained, and that a test may, to some extent, be afforded for the ascertainment of its legal correctness. It remains only to declare that in my opinion, the decree of the Court below should be affirmed with costs.

*a* Mitford's Plead. 145-6 and 221. 2 Atk. 51-510 and 14. 1 John. Ch. R. 437 & 349. 3 Cranch 220. 7 Cranch 87. 1 Peters' U. S. R. 304. 12 Wheaton 193.

By JUDGE PERRY. The decree of dismissal is
assigned for error, and this brings the whole equity of
the bill to the consideration of the Court; and from the
best examination that I have been enabled to give it, I can-
not perceive any sufficient ground for retaining the bill.
This bill seeks to transfer the jurisdiction of the suit at
law to this Court, and to have the case finally decided
here, and the suit at law perpetually injoined. The first
question which arises is, whether the bill shews a right
or title to relief in this Court. I am clearly of opinion it
does not, and that the complainant cannot be relieved upon
the facts stated in it; because the facts, if true, might be
used at law. The complainant seeks to be relieved from
the effect of the judgments obtained against him in the
State of Georgia, and which are sought to be enforced in
this State, upon the ground that he had no notice of the
pendency of said suits in Georgia; or in other words, that
the Court rendering the judgments had no jurisdiction of
his person. If a judgment of a sister State can be resisted
upon the ground that the Court which rendered the judg-
ment had no jurisdiction over the person of the defendant,
it follows as an irresistible conclusion, that a Court of law
is the proper tribunal to afford the relief sought in the com-
plainant's bill. The case in 4 Cowen's Reports 292, is
full upon this point. It is there decided by the Supreme
Court of the State of New York, on a review of all the
cases in which the conclusiveness of judgments of sister
States was considered, that in an action upon a State judg-
ment, it is competent for the defendant to show by a
special plea, that the Court in which the judgment was
rendered, had no jurisdiction either of the subject matter,
or over the person of the defendant; that to give any binding
effect to a judgment, it is essential that the Court should
have jurisdiction over the person and of the subject matter;
and that the want of jurisdiction is a matter that may always
be set up against a judgment when sought to be enforced,
or when any benefit is claimed under it; that the want of
jurisdiction makes it utterly void and unavailable for any
purpose; and that the party was not precluded from shew-
ing that the judgment was fraudulently obtained, or that
the Court had no jurisdiction over his person; that the
Constitution and laws of the United States, declaring that
full faith and credit shall be given to the public acts, re-
cords, and judicial proceedings of the several States, by
each State, only contemplated such as were within the

jurisdiction of the State whence the record comes. Therefore, whenever a record of a judgment of any Court of any State is produced as conclusive evidence, the jurisdiction of the Court rendering it, is open to inquiry, and if it should appear that the Court had no jurisdiction of the cause, no faith or credit whatever will be given to the judgment. In like manner, that if a Court of any State should render judgment against a man not within the State, nor bound by its laws, nor amenable to the jurisdiction of its Courts, if the judgment should be produced in any other State, against the defendant, the jurisdiction of the Court might be inquired into; and if a wan tof jurisdiction appeared, no credit would be given to the judgment.

The whole matter of the bill, as I conceive, being predicated upon the ground that the judgments were conclusive and irresistible in a Court of law. Having shewn, as I believe, that a Court of law would resist the conclusiveness of the judgments, and all the other matters charged in the bill being purely of law cognizance; the complainant's bill was therefore, properly dismissed.

By JUDGE LIPSCOMB, C. J. In addition to the very able opinions that have been delivered, I will subjoin a few suggestions, that to my mind are equally conclusive in favor of the decree. It is a rule that universally obtains, that he who seeks equity, must first do justice. If the complainant has, by his negligence, or by design, participated in practising a fraud, he should remain where the rigid rule of law had left him. There is much in the record before us, to induce the belief, that if the copartnership of J. & W. Lucas has ever in fact been dissolved, that it was a secret dissolution, intended to be used by the partners as their interest might prompt, whilst the community should be deluded by the impression that the firm still continued its mercantile operations. When we are required to believe, that a firm that had been extensively engaged in business, composed of men capable of wielding such weighty concerns, had secretly dissolved in good faith, our credulity is taxed to the utmost stretch. There can be no doubt, whatever may have been the intentions of the parties, that this secret dissolution cannot discharge the partners from any liability incurred by their firm. The complainant seeks to be relieved from the payment of debts contracted in the name of the firm subsequent to this alleged dissolution. His negligence,

to use the mildest term, has subjected him to those lia-
bilities, both in morality and in law. If judgments have
been recovered against him on those liabilities, however
irregularly they may have been obtained, a Court of Chan-
cery would be acting out of its proper sphere, were it to
open those judgments to let in a naked legal defence. The
decree of the Chancellor dismissing complainant's bill
with costs, is therefore affirmed.

Decree affirmed.

Judges Crenshaw and White, not sitting.